Argued 6 November; decided 11 December, 1899.

### ROSE *v.* WOLLENBERG.

[ 59 Pac. 190.]

Contribution Between Surety and Co-surety — Instruction. — Where plaintiff agreed to become one of three sureties on a county treasurer's bond for $30,000, and at its execution only plaintiff and defendant were present, and, plaintiff objecting to becoming surety for more than one-third of the bond, defendant agreed to take the balance, and, on the treasurer's default, both sureties were compelled to contribute equally thereto, an instruction, in an action by one of the sureties to recover from the other the excess of one-third of the default, which he had paid, that the jury might find an implied contract on defendant's part to repay such amount if, at the time they executed the bond, they mutually understood that they assumed liability in the proportion of one-third to two-thirds, was error, since such understanding was not of itself sufficient proof of an implied contract to vary the ordinary rule of contribution between sureties; and, furthermore, it was misleading as to whether the understanding between the parties referred to their liability to the county, or the liability as between themselves.

From Douglas :   J. C. Fullerton, Judge.

Action by Aaron Rose against Hyman Wollenberg.   In a former appeal by plaintiff the case was reversed (31 Or. 269, 65 Am. St. Rep. 826, 39 L. R. A. 378, 44 Pac. 382), and plaintiff prevailed on the second trial.

<div align="right">Reversed.</div>

For appellant there were briefs over the names of *J. W. Hamilton* and *Lewis B. Cox*, with an oral argument by *Mr. Cox.*

For respondent there was a brief and an oral argument by *Messrs. Rufus Mallory* and *Andrew M. Crawford.*

Mr. Justice Bean delivered the opinion of the court.

In 1892 the plaintiff and defendant became sureties on the official bond of V. L. Arrington, Treasurer of Douglas County. Arrington made default in the sum of $22,990, which they were compelled to pay in equal parts. Thereafter the plaintiff brought this action to recover $4,003.55, alleging that at the time of the execution of the bond it was agreed and stipulated between him and the defendant that their liability, as between themselves, should not be joint or equal, but that the plaintiff should be liable for one-third, and defendant for two-thirds, of any loss thereon. This alleged contract was denied by the defendant, and, upon issue joined, the cause was tried before a jury, resulting in a verdict in favor of plaintiff for the amount prayed for; and from the judgment which followed the defendant appeals, assigning as error the following instruction to the jury : "The complaint in this case alleges, in substance, that an agreement was entered into between the plaintiff and the defendant, at the time of the execution of the bond of V. L. Arrington as Treasurer of Douglas County, that there was an agreement between plaintiff and defendant, as sureties to said bond, that the plaintiff should be liable for one-third part of any default Arrington might make as county treasurer, and that defendant should be liable for two-thirds of any such default. I charge you that such agreement may be established by proof of circumstances from which such agreement may be inferred, and that it is not necessary, to entitle plaintiff to recover, to prove that such agreement was made in express words, or by the use of any formal expression or statement of the parties. Therefore, if you find from the evidence before you that at the time this bond was executed the plaintiff and defendant each understood that they were assuming liabilities on it in the ratio of one-

third by the plaintiff and two-thirds by the defendant, and that they executed the same with that understanding, and each knew that such was the understanding of the other, such facts, if you find them to be facts, would be evidence from which an agreement could be inferred, and would be sufficient to prove the allegations of an agreement set out in the complaint.''

There was no evidence of an express contract by defendant to indemnify plaintiff against liability as a surety on Arrington's bond. It must be implied from the conduct of the parties and the circumstances of the case, if it existed at all. The instruction complained of is the only one given as to what would be sufficient proof of an implied contract. To understand its importance and the particular objection made to it, a brief reference is necessary to some of the facts, a statement of which will be found in the former opinion in this case : 31 Or. 269 (44 Pac. 382). Arrington was required to give a bond for $30,000, and the evidence tended to show that he represented to the plaintiff that it was to be signed by three sureties, and, with that understanding, plaintiff consented to become one of them. When the time came for executing the bond, the plaintiff, discovering that defendant and himself were the only sureties present, objected to becoming a surety for more than one-third of the amount of the bond, whereupon Arrington offered to get the third surety, when the defendant said that it was not necessary, for he would ''take the rest of the bond.'' It was thereupon executed, with the figures ''$10,000'' written immediately in front of plaintiff's signature ; and he justified in that sum, and the defendant in the sum of $20,000. The point of the objection is that in view of this testimony the jury could very properly have found that the plaintiff and defendant each understood or supposed at the time they executed the bond that they were assuming liability thereon

to the county in the proportions of one-third and two-thirds, and that by the instruction such an understanding alone was made sufficient proof of a contract between the plaintiff and defendant to modify or change the ordinary rule of contribution between sureties.    And in this position we concur.    By the execution of the bond, the sureties assumed a dual liability :    First, to the county, and, second, as between themselves.    The liability of each of them to the county must be measured by the face of the bond, and not by the mode or manner of its execution. Their liability as between themselves results from equitable principles, and, unless changed by a contract, they would each be liable for one-half the loss.    The court charged the jury very properly, therefore, that before the plaintiff could recover he must prove the contract alleged in the complaint by a preponderance of evidence, and mere proof of the manner in which the bond was executed would not be sufficient for that purpose, and also that it was not necessary to prove an express contract, but that it might be inferred from the acts and conduct of the parties.    So far there was no error.    But, when it came to charge the jury specifically as to what would be sufficient proof of an implied contract, it left the question to be determined upon the understanding of the parties as to the liability they were assuming by the execution of the bond, and this was not the question in issue. The thing to be established was a contract by the defendant that in case of a default he would indemnify the plaintiff for any sum above one-third of the loss which he might have to pay ; and this agreement cannot be inferred merely from the understanding the parties may have had as to the liability they assumed in executing the bond, but, like any other contract, must be founded upon the mutual agreement and intention of the parties.

When an agreement consists of words, written or spoken,

stating in terms the understanding and obligations of the
parties, it is called an "express contract;" but when it
is inferred from the acts or conduct of the parties, instead
of their words, it is an "implied contract." But in either
instance it exists as an obligation solely because the con-
tracting party has willed, under circumstances to which
the law attaches the sanction of an obligation, that he
shall be bound. And the distinction between an express
and implied contract lies, not in the nature of the under-
taking, but solely in the mode of proof. In either case
there must be an offer of terms, or its equivalent, on the
one side, and the acceptance of such terms, or its equiva-
lent, on the other. "All true contracts," says Mr. Justice
LOWRIE, "grow out of the intentions of the parties to
transactions, and are dictated only by their mutual and
accordant wills. When this intention is expressed, we
call the contract an express one. When it is not expressed,
it may be inferred, implied, or presumed, from circum-
stances as really existing, and then the contract, thus
ascertained, is called an implied one:" *Hertzog* v. *Hertzog*,
29 Pa. St. 465–467. And in *Marzetti* v. *Williams*, 1 Barn.
& Adol. 415, Lord TENTERDEN says: "The only difference
between an express and implied contract is in the mode
of substantiating it. An express contract is proved by an
actual agreement; an implied contract, by circumstances
and the general course of dealing between the parties."
Mr. Keener, in his work on Quasi Contracts (p. 4), says:
"In the case of a contract implied in fact, as much as in
the case of an express contract, the plaintiff must prove
that the defendant either made or accepted an offer which
resulted in a promise on the defendant's part, and that the
promise was not only in fact made, but that a sufficient
consideration was given therefor. * * * The differ-
ence between the cases is a difference simply in the kind
of evidence used to establish the contract. In the one case

the language of contract is in terms used, and, because
of the expressions used, the contract is called an 'express
contract;' whereas in the other case the contract is estab-
lished by the conduct of the parties, viewed in the light
of surrounding circumstances, and is called a 'contract
implied in fact.' The terms 'express contracts' and 'con-
tracts implied in fact' are used, then, to indicate, not a
distinction in the principles of contract, but a difference
in the character of the evidence by which a simple con-
tract is proved. The source of the obligation in each case
is the intention of the parties.'' It is clear, then, from
these elementary principles, that, before the plaintiff can
recover in this case, he must make it appear by a pre-
ponderance of testimony that there was an agreement on
the part of the defendant to indemnify him against lia-
bility on the bond in excess of one-third thereof; and,
while this contract may be implied from the conduct of
the parties, nevertheless it cannot exist as an obligation
unless the defendant willed, either expressly or by im-
plication, to be so bound.

The fact, if it is a fact, that at the time of the execu-
tion of the bond the parties both mistakenly understood
that they were liable in the proportion of their respective
justifications, would not be proof, of itself, of the contract
alleged in the complaint. But by the instruction com-
plained of the court told the jury that it would be suf-
ficient proof of an implied contract of agreement on the
part of the defendant to indemnify the plaintiff if the
parties ''each understood that they were assuming lia-
bilities on it in the ratio of one-third by the plaintiff and
two-thirds by the defendant, and that they executed the
same with that understanding, and each knew that such
was the understanding of the other,'' without indicating
whether such understanding was confined to their liabil-
ity to the county, or as between themselves. The court

seems to have confused the question of the sureties' supposed liability on the bond with the real issue in the case, and to have made the existence or nonexistence of a contract modifying or changing the ordinary rule of contribution between sureties to depend upon their understanding as to the liability incurred by the execution of the instrument; and, as we have seen, this is not enough. As held on the former appeal, there was sufficient evidence in the case from which the jury could have found the contract as alleged in the complaint, but they could not do so simply on account of any understanding the parties may have had as to their liability to the county. We think, therefore, the instruction complained of was error.

It is also claimed on behalf of the defendant that the court below erred in overruling his motion for judgment notwithstanding the general verdict. This motion was based upon the answers given by the jury to two special interrogatories, but there is such a want of clearness in their language that the case ought not to be finally disposed of on the jury's answers thereto, and therefore it is reversed and remanded for a new trial. REVERSED.

<div align="center">

Decided 11 December, 1899; rehearing denied 26 February, 1900.