Argued and submitted February 8; on appeal, general judgment affirmed;
on cross-appeal, supplemental judgment reversed and remanded
November 24, 2021

Thomas P. MOYER, Jr.;
Colleen Moyer Thrift; Ian Moyer;
Patrick Moyer; Michael Thrift;
and Ashley Craven,
*Plaintiffs-Appellants*
*Cross-Respondents,*

*v.*

COLUMBIA STATE BANK,
a Washington chartered bank, et al.,
*Defendants,*
*and*

FIRST REPUBLIC BANK,
a California chartered bank,
dba First Republic Trust Company,
*Defendant-Respondent*
*Cross-Appellant.*

Multnomah County Circuit Court
16CV39229; A169295

503 P3d 472

Plaintiffs appeal a general judgment for defendant First Republic Trust Company (FRTC), after the trial court entered summary judgment for FRTC on plaintiffs' claims of breach of contract and negligence. They contend that the trial court erred in granting FRTC's motion for summary judgment, because the record on summary judgment includes documents and communications that give rise to a question of fact as to the existence of an implied-in-fact contract between the parties under which FRTC, as trustee of a revocable trust, agreed to make transfers from the revocable trust to separate trusts established for plaintiffs, in order to minimize estate tax liability upon the death of the revocable trust's settlor. FRTC cross-appeals a supplemental judgment denying its petition for attorney fees under ORS 130.815 for having prevailed on plaintiffs' claims, contending that the trial court erred in determining that FRTC had failed to plead an entitlement to attorney fees under the statute, as required by ORCP 68 C(2)(A). *Held*: On plaintiffs' appeal, the Court of Appeals held that the trial court did not err in granting FRTC's motion for summary judgment on plaintiffs' breach of contract claims, as the record on summary judgment does not include evidence from which a reasonable factfinder could find an implied-in-fact agreement by FRTC to carry out the transactions alleged by plaintiffs. On FRTC's cross-appeal, the court held that FRTC had pleaded a sufficient basis for an award of attorney fees under ORS 130.815 by alerting plaintiffs in its responsive pleading that attorney fees would be sought and by alleging facts that brought the matter within ORS 130.815, which provides for an award of fees in a judicial proceeding involving the

validity or administration of a trust. The court held that the trial court therefore erred in rejecting FRTC's petition for an award of fees.

On appeal, general judgment affirmed; on cross-appeal, supplemental judgment reversed and remanded.

Leslie G. Bottomly, Judge.

John W. Stephens argued the cause for appellants-cross-respondents. Also on the briefs was Esler Stephens & Buckley LLP.

David A. Bledsoe argued the cause for respondent-cross-appellant. Also on the briefs were Dan L. Bagatell, New Hampshire, and Perkins Coie LLP.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Mooney, Judge.

ARMSTRONG, P. J.

On appeal, general judgment affirmed; on cross-appeal, supplemental judgment reversed and remanded.

## ARMSTRONG, P. J.

Plaintiffs appeal a general judgment for defendant First Republic Bank (FRB), doing business as First Republic Trust Company (FRTC), after the trial court entered summary judgment for FRTC on plaintiffs' claims of breach of contract and negligence. FRTC cross-appeals a supplemental judgment denying its petition for attorney fees. We affirm the trial court's summary judgment ruling but reverse and remand the supplemental judgment for reconsideration of FRTC's petition for attorney fees.

We summarize the facts relevant to plaintiffs' appeal. Thomas P. Moyer Sr. died in November 2014. The issues presented on appeal concern the Thomas P. Moyer Revocable Trust, created by Moyer in 2007, and in which he placed all of his real estate, business interests, and investment accounts. The revocable trust directed that, should Moyer become incapacitated or resign as trustee, FRTC would act as successor trustee. Under the revocable trust, Moyer's four children were to receive net income from the trust but could not inherit the principal assets, which were to remain intact for the benefit of Moyer's grandchildren.

The trust provided the trustee with broad powers to manage trust assets, including investing, selling, borrowing, and paying taxes.[1] The trust provided that "[a] Trustee shall be liable only for his or her own willful breach of trust."

In 2010, Moyer was diagnosed with dementia. He sought to have his granddaughter, Vanessa Sturgeon, take over operation of his businesses and gave her a durable power of attorney. He also resigned as trustee of the revocable trust, and FRTC succeeded him.

---

[1] For example, under paragraphs 11.2(S) and (T), the trustee had the power:

"(S) To enter into mergers, recapitalizations, corporate divisions, liquidations or other forms of corporate reorganizations; to participate in corporate or partnership formations or joint ventures with respect to trust property; to amend any agreement relating thereto; or to distribute or liquidate therefrom; and

"(T) To do all acts, except as herein otherwise specified, in its judgment needful or desirable for the proper and advantageous management of the trust estate, to the same extent and with the same effect as might legally be done by an individual in absolute ownership and control of the said property."

Plaintiffs, who are two of Moyer's children and their four children, became concerned that Moyer was unable to direct FRTC's management of the trust for estate tax planning purposes. They also challenged the power of attorney to Sturgeon. In March 2012, they commenced a proceeding for the appointment of a conservator or guardian for Moyer to evaluate strategies to minimize the estate tax burden on the event of Moyer's death.

Through counsel, Moyer objected to the appointment of a conservator but offered to allow the appointment of Columbia State Bank (CSB) as a "special fiduciary," which, along with FRTC, would investigate possible strategies to reduce estate taxes.

The parties worked to settle the conservatorship matter. Plaintiffs alleged in their Third Amended Complaint that, as an inducement to settlement, FRTC promised to develop and implement estate-planning proposals for Moyer's estate to minimize transfer taxes upon his death. Plaintiffs alleged that, under circumstances that gave rise to an implied-in-fact contract, plaintiffs agreed to the entry of a limited stipulated judgment in the conservatorship proceeding and the appointment of CSB as special fiduciary and special representative of the revocable trust.[2]

After the appointment of CSB as special fiduciary, plaintiffs urged FRTC to carry out certain tax-minimizing strategies, including the creation of separate "mirror-image" trusts—*viz.*, trusts that were identical in their terms to the revocable trust—for each of the four children and the transfer of voting shares in revocable-trust properties to the mirror-image trusts, so as to eliminate the revocable trust's "control premium" and thereby minimize estate taxes. FRTC considered plaintiffs' suggestions and executed some

---

[2] Plaintiffs' complaint alleged:

"In 2012, to resolve a controversy that had arisen with respect to the appointment of a conservator or other representative to engage in estate planning for Mr. Moyer's estate[, *i.e.*, settle the protective proceeding], [FRTC] *** expressly and impliedly promised to, at the very least, Mr. Moyer, plaintiffs Tom Moyer, Jr. and Colleen Thrift, and each other to develop and carry out (implement) estate planning proposals for Mr. Moyer's estate with the objective (to accomplish the result) of minimizing the transfer taxes that might become due upon the death of Mr. Moyer."

of them but rejected others. With FRTC's agreement, CSB established the mirror-image trusts for each child, with FRTC as trustee. FRTC transferred nonvoting shares of D. Park Corporation, a trust asset, from the revocable trust to CSB, for the purpose of funding the mirror-image trusts.

But FRTC declined to transfer voting shares of revocable trust assets to the mirror-image trusts. Plaintiffs urged FRTC to swap the nonvoting shares for controlling interests in Fox Tower, LLC and Tom Moyer Theatres, LLC., which also were trust assets, with the intended effect of reducing the value of the revocable trust's interests in those entities. FRTC rejected those proposals after determining that the transfer of voting shares to the mirror-image trusts would violate Moyer's intention as expressed in the trusts that his children, for whom he had generously provided, not have access to more than the net income of the revocable trust, in order to assure that Moyer's grandchildren and their progeny would enjoy the benefit of the trust.

Moyer died in November 2014. Plaintiffs brought this action, alleging among other claims, that FRTC had breached an implied-in-fact agreement, reached during the settlement discussions around the conservatorship proceeding, to take action before Moyer's death to transfer assets to reduce estate taxes. As noted, the trial court granted FRTC's motion for summary judgment on the contract claims.

Plaintiffs' first assignment of error presents a procedural issue. Plaintiffs contend that the trial court erred in considering in its summary judgment ruling FRTC's arguments addressed to the breach-of-contract claims. We provide some procedural context for the issue:

Plaintiffs' original complaint and their first and second amended complaints alleged claims of negligence against FRTC and three other defendants. FRTC filed its motion for summary judgment against the second amended complaint, asserting that, under the terms of the trust, FRTC was entitled to judgment as a matter of law. The motion was stayed to allow plaintiffs further discovery.

The court then allowed plaintiffs to file a third amended complaint, which added claims for breach of

contract, after which plaintiffs filed a response to FRTC's summary judgment motion. In their response, plaintiffs asserted that FRTC's summary judgment motion, citing the terms of the trust, was inapt, because plaintiffs' claims were not asserted under the trust, but were based on a separate express or implied-in-fact agreement between FRTC and plaintiffs, as alleged in their third amended complaint. In its reply memorandum on summary judgment, FRTC addressed the newly pleaded breach-of-contract claims and asserted that the record on summary judgment did not present a genuine issue of material fact as to the existence of a contract, entitling FRTC to judgment as a matter of law.

The court held a hearing on the motion, and FRTC opened with arguments addressing plaintiffs' breach-of-contract claims. Plaintiffs' counsel responded that FRTC's arguments against the contract claims were not properly before the court because they had not been raised in the motion. But plaintiffs' counsel also suggested that the court could treat FRTC's reply memorandum as a new summary judgment motion that raised the breach-of-contract claims and grant plaintiffs 20 days to respond, as required by ORCP 47.[3] The court immediately ruled that it would deem FRTC's reply memorandum as a new motion for summary judgment on the breach-of-contract claims and directed plaintiffs to respond in 20 days. The court said that the issue was an important one, and plaintiffs' counsel committed to providing a response.[4]

─────────

[3] ORCP 47 C provides:

"The motion and all supporting documents must be served and filed at least 60 days before the date set for trial. The adverse party shall have 20 days in which to serve and file opposing affidavits or declarations and supporting documents."

[4] The court emphasized its desire to have a response from plaintiffs on the motion:

"THE COURT: So your position is, 'I can't *** grant a Summary Judgment on the grounds that there was no contract.'

"MR. STEPHENS: Correct, because—

"THE COURT: Unless I give you more time to brief that.

"[PLAINTIFFS' COUNSEL]: Well, that would be—I mean you would have to deem that to be a new motion, and then I respond ***

"THE COURT: Okay. *I hereby deem it to be a new motion.*

Plaintiffs' counsel then responded orally to FRTC's arguments against the breach-of-contract claims, again acknowledging his intention to provide a written response, explaining that the circumstances giving rise to the alleged contract were "all going to be something that we'll deal with when we respond to the new motion on the contract issue."[5]

But plaintiffs' counsel did not file a written response to the "new" summary judgment motion, and, after 29 days, the trial court issued an order granting FRTC's motion.

We turn to plaintiffs' first assignment of error. We do not understand plaintiffs to attack the trial court's decision to treat FRTC's reply memorandum as a motion for summary judgment—indeed, plaintiffs' counsel suggested

_____

"[PLAINTIFFS' COUNSEL]: Okay. Well, then—*then I get 20 days to respond to it.*

"THE COURT:  That's fine.

"[PLAINTIFFS' COUNSEL]: Okay. Okay. And well—We will deal with—We'll deal with it.

"THE COURT: Okay. Which is not—By the way, I'm not projecting any decision on that, but I think it's an important issue.

"[PLAINTIFFS' COUNSEL]: Yeah. Okay. *Then I will intend to respond accordingly.*

"THE COURT:  Okay; okay."

(Emphases added.)

[5] In offering to reply to plaintiffs' counsel's argument, FRTC's counsel reasoned that he would not address the contract issue, and the trial court agreed:

"[FRTC's COUNSEL]:  If I understand correctly, what we'll have next is our reply will be treated as if it was a new motion and there will be a response and then a reply, so I won't get into the details here. * * *

"THE COURT: It's safe to stay away from the contract issues, that you folks will have an opportunity to discuss this separately."

FRTC's counsel nonetheless replied briefly:

"I think we were citing the current law. The State of Oregon does still insist on things like specific offer, acceptance consideration, and I just am not hearing who entered into this contract and when and what the terms were."

The court noted that that issue was "for the future," and expressed the desire for plaintiffs' counsel to provide a response:

"THE COURT:  Okay. That will be for the future.

"[PLAINTIFFS' COUNSEL]:  Okay, good, because it's easy to do, so—

"THE COURT:  Yeah. Please do it.

"[PLAINTIFFS' COUNSEL]:  Okay. I will."

it.[6] We understand plaintiffs to argue, rather, that that motion was not yet before the court, because the court had decided to first address only the original summary judgment motion, which did not challenge the breach-of-contract claims, their having been filed after the original motion. Thus, plaintiffs contend, the court should not have addressed FRTC's arguments relating to the breach-of-contract claims in its summary judgment ruling.

Plaintiffs' argument depends on their view that, despite several references at the hearing to the need for a response in 20 days, the court abruptly shifted and postponed legal arguments on the breach-of-contract claims until after it had considered the arguments made in FRTC's original summary judgment motion, relating to the provisions of the revocable trust; then, if need be, plaintiffs contend, the court would hear from the parties on the "new" motion.[7] In support of their interpretation, plaintiffs rely on this comment by the court at the conclusion of the hearing:

> "I think what I will do, I do want to go back and look at the Trust Statute. In light of the argument, I may rule separately on that just to—If I make up my mind, I might as well let you know on whether I view it as under that statute or not. Otherwise, I won't be able to rule until after argument on the whole contract issue."

Plaintiffs contend that the court's statement reflects the court's decision to postpone argument on and consideration of the "new" summary judgment motion until after the court had ruled on the original motion. Plaintiffs assert that, in violation of its own ruling, the court mistakenly addressed the breach-of-contract issue in its ruling.

It may be that the court's comments at the conclusion of the hearing reflect the court's decision to address

---

[6] But if and to the extent that plaintiffs assert in their first assignment that the court lacked authority to treat FRTC's reply memorandum as a motion for summary judgment or to address FRTC's substantive arguments on summary judgment relating to the existence of a contract in its ruling, we reject it as unpreserved. Additionally, we would conclude that any error by the court was invited.

[7] Plaintiffs have appended to their brief an email from FRTC's counsel that they assert shows that FRTC's counsel also believed that legal argument on the breach-of-contract issue was "on hold." The email is not in the record, and we decline to consider it.

first the arguments related to the trust, raised in FRTC's original motion, and then let the parties know its ruling before considering the "new" motion. But we have read the entire transcript of the hearing on the summary judgment motion, and we have found no suggestion that the court intended to modify its direction to plaintiffs' counsel to file a response to the new summary judgment motion in 20 days. If, as the court had deemed it, FRTC's reply memorandum was a motion for summary judgment, then plaintiffs had 20 days to respond to it. ORCP 47 C. When plaintiffs did not file a response in 20 days, the court made its summary judgment ruling without the benefit of plaintiffs' response. We reject plaintiffs' contention that the court's ruling was inconsistent with the process outlined at the hearing or that the court erred in addressing the breach-of-contract claims in its summary judgment ruling.

As noted, the trial court granted FRTC's motion for summary judgment.[8] In view of our determination that the court did not err in considering FRTC's summary judgment challenges to the breach-of-contract claims, we turn to an alternative argument, which plaintiffs raise in their second assignment of error, that the trial court erred in concluding

---

[8] The trial court issued an opinion explaining its ruling:

"Plaintiffs take great pains to attempt to bring their claims outside the trust agreement. Although trustees can enter into contracts with beneficiaries outside the purview of the trust agreement, a trustee's duty to a beneficiary derives from the relationship of trustee/beneficiary, and does not extend indefinitely to all dealings between the trustee and beneficiary. Plaintiffs cite no basis for transplanting the trustee's duty under the trust agreement onto an asserted outside promise in order to fabricate a separate duty towards the beneficiaries on which to base a non-trust code tort claim. There is no issue of material fact with respect to whether [FRTC] owed the Plaintiffs any duty with respect to the tax strategies promoted by Plaintiffs.

"As an additional basis for this ruling, the communications regarding the tax strategies do not, as a matter of law, constitute a contract. The communications on their face defeat the assertion of an intent to be bound. The correspondence references 'possible' transactions that were being 'considered,' and 'review' of 'proposals.' Plaintiffs were reminded: 'of course, these proposals are in their formative stages, and we cannot at this point guarantee any particular results, nor do we intend for this letter to constitute a representation or opinion regarding any particular result.' Plaintiffs were reminded expressly that they 'have no right to be a part of the process' and 'those are not your decisions to make' regarding tax strategies. In addition, the alleged promises were simply too indefinite; *e.g.*, 'possibly to develop other proposals, with the intention of implementing one or more proposals before the end of the year.'"

that the record on summary judgment did not give rise to a genuine issue of material fact concerning the existence of an implied-in-fact contract. Plaintiffs contend that the record on summary judgment includes evidence of conduct from which the promises alleged to have been made by FRTC can be inferred.

In reviewing the trial court's ruling on summary judgment, we view the evidence and all reasonable inference in the light most favorable to plaintiffs to determine whether there are genuine issues of material fact that preclude summary judgment. ORCP 47 C. Plaintiffs, as the party with the burden of proof on the issue at trial, had the burden on summary judgment to present evidence that gave rise to an issue of fact on all of the elements of their claim. *See Two Two v. Fujitec America, Inc.*, 355 Or 319, 324, 325 P3d 707 (2014) ("[U]nder ORCP 47 C, the party opposing summary judgment has the burden of producing evidence on any issue 'raised in the motion' as to which the adverse party would have the burden of persuasion at trial.").

Whether a contract exists is a legal question. *Ken Hood Construction v. Pacific Coast Construction*, 201 Or App 568, 577, 120 P3d 6 (2005), *adh'd to as modified on recons*, 203 Or App 768, 126 P3d 1254, *rev den*, 341 Or 366 (2006). A contract does not arise because one party desires it; there must be *mutual* assent. As we said in *Ken Hood Construction*,

> "Contract formation requires 'a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.' *Restatement (Second) of Contracts* § 17(1) (1981). 'The manifestation of mutual assent to an exchange ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties.' *Id.* at § 22(1)."

*Id.* at 578.

An implied-in-fact contract, like any other contract, "must be founded upon the mutual agreement and intention of the parties." *Mindful Insights, LLC v. VerifyValid, LLC*, 301 Or App 256, 266-67, 454 P3d 787 (2019), *adh'd to on recons*, 302 Or App 528, 461 P3d 1034, *rev allowed*, 367 Or 257 (2020). The implied-in-fact contract is distinguished

from an express contract primarily by its method of proof. As the Supreme Court said in *Rose v. Wollenberg*, 36 Or 154, 157, 59 P 190 (1899),

> "When an agreement consists of words, written or spoken, stating in terms the understanding and obligations of the parties, it is called an 'express contract'; but when it is inferred from the acts or conduct of the parties, instead of their words, it is an 'implied contract.' But in either instance it exists as an obligation solely because the contracting party has willed, under circumstances to which the law attaches the sanction of an obligation, that he shall be bound. *And the distinction between an express and implied contract lies, not in the nature of the undertaking, but solely in the mode of proof. In either case there must be an offer of terms, or its equivalent, on the one side, and the acceptance of such terms, or its equivalent, on the other. \*\*\* When this intention is expressed, we call the contract an express one. When it is not expressed, it may be inferred, implied, or presumed, from circumstances as really existing, and then the contract, thus ascertained, is called an implied one.*"

(Emphasis added; citations and quotation marks omitted); *see Mindful Insights, LLC*, 301 Or App at 266. *See also Gadalean v. SAIF*, 364 Or 707, 717 n 3, 439 P3d 965 (2019) ("This court has explained that a contract implied in fact arises 'where the natural and just interpretation of the acts of the parties warrants such [a] conclusion.' *Owen v. Bradley*, 231 Or 94, 103, 371 P2d 966 (1962)."); *Staley v. Taylor*, 165 Or App 256, 262, 994 P2d 1220 (2000) (same). A claim based on an implied-in-fact contract will survive summary judgment if, when viewed in the light most favorable to the plaintiff, the record on summary judgment would permit a reasonable factfinder to find that the parties' acts warrant the conclusion that the parties had a mutual agreement. *See Yoshida's Inc. v. Dunn Carney Allen Higgins & Tongue*, 272 Or App 436, 457, 356 P3d 121 (2015), *rev den*, 358 Or 794 (2016) (same). Thus, in evaluating the record, viewed in the light most favorable to plaintiffs, to determine whether it supports the trial court's summary judgment ruling, we look for evidence of "acts" from which a reasonable factfinder could find the existence of the agreement alleged by plaintiffs.

In plaintiffs' view, the record on summary judgment includes evidence that gives rise to a question of fact as to the existence of a promise by FRTC to perform a specific task—the implementation of potential tax-minimizing transfers from the revocable trust. The evidence cited by plaintiffs consists of several communications that occurred between August 28, 2012 and May 2013:

(1) During the pendency of the conservatorship proceeding, on August 28, 2012, FRTC's attorney wrote to plaintiffs' attorney, describing transactions that FRTC was considering to reduce the estate's tax liability on the event of Moyer's death.[9] After describing the possible transactions, the letter described the possible benefits of the proposed transactions, including benefits to the trust's beneficiaries and significant potential tax savings.[10] It then stated:

> "*Of course, these proposals are in their formative stages, and we cannot at this point guarantee any particular results, nor do we intend for this letter to constitute a representation or opinion regarding any particular results.* Some or all of these proposals might incur gift taxes.
>
> "We currently intend to continue moving forward in our review of these proposals, and possibly to develop other proposals, with the intention of implementing one or more proposals before the end of the year. The purpose of this letter

---

[9] Several of the described transactions were similar to those that plaintiffs were pressing FRTC to implement. Two transactions involved the creation of a mirror-image trust for the benefit of the children and the gifting or sale of assets of Tom Moyer Theatres from the trust to the mirror-image trust, so that the revocable trust's interest would be less than 50 percent. A third described a transaction that would require Moyer, through a power of attorney, to renounce his income and discretionary principal interest in his deceased wife's trust, the Marilyn Moyer Trust, which would effect a gift to the four children. The fourth- and fifth-described transactions were the sale to a new trust of an interest in Park Avenue West or Fox Tower, to reduce the revocable trust's interest to below 50 percent.

[10] The letter explained:

"The proposals described above could not only benefit the four children, but could also have substantial benefit for the grandchildren. In addition to reducing Mr. Moyer's interests, increasing the interests of the children, and increasing the interests of the grandchildren, some of these proposals could also increase the interests of Mr. Moyer's charitable beneficiary, the Marilyn Moyer Charitable Trust. We also believe that the estate tax savings resulting from these proposals could be very substantial, possibly in the range of $10 million to $20 million. That tax reduction would substantially benefit your clients and their children."

is to solicit your comments (and the comments of your three clients) on these proposals. \*\*\* *Ultimately, the decision to adopt one of these proposals, or to adopt other proposals, lies with the parties who have previously been designated by Mr. Moyer to carry out his estate plan*, but we nevertheless wish to receive your comments."

(Emphases added.) The letter is cited by plaintiffs as providing the framework for the alleged promise. But although the letter describes possible tax-minimizing transactions and their potential benefits to the estate's beneficiaries, it does not reflect or suggest a commitment by FRTC to carry out those specific transactions. In fact, the letter states that FRTC was *considering* them and explicitly reserves to FRTC—as "the parties who have previously been designated by Mr. Moyer to carry out his estate plan"— decisions concerning estate planning, negating any inference of a commitment or promise by FRTC to carry out specific tax-minimizing transfers.

(2)    As noted, plaintiffs sought to have a conservator appointed to allow transfers to be made from Moyer's revocable trust for tax-minimizing purposes. Moyer, as well as FRTC and Moyer's daughter Kimberly Moyer, objected to the appointment of a conservator. On October 19, 2012, Moyer's personal attorney, Sybille Baer, wrote to plaintiffs' attorney, proposing to settle the conservatorship matter:

"In light of the complexity of Mr. Moyer's estate and the complicated dynamics at play, it is my professional opinion that the appointment of a Special Fiduciary \*\*\* is the most appropriate mechanism by which to effectuate gifting, estate and tax planning, and transfer of assets.

"[FRTC, CSB, and Kimberly Moyer] are in agreement with the foregoing. I would like to schedule a time next week to present the Terms for Appointment of Special Fiduciary \*\*\* to the court as a way in which to potentially settle the conservatorship. This assumes, of course, that you and your clients have no objection to the proposal aside from your belief that a conservator may better withstand the scrutiny of a subsequent audit by the Internal Revenue Service. Agreement to the appointment of a Special Fiduciary would contemplate a dismissal of the conservatorship petition and agreement that any rights your clients

might have with respect to the Trust would not be diminished by the appointment of the Special Fiduciary."

In plaintiffs' view, that letter initiated the negotiations that ultimately led to plaintiffs' acceptance of the appointment of CSB as fiduciary, in exchange for promises by FRTC to make tax-minimizing transfers of assets from the revocable trust. Plaintiffs cite the letter's statement that "[FRTC, CSB, and Kimberly Moyer] are in agreement with the foregoing." As a preliminary note, plaintiffs have not presented evidence that a letter from *Moyer's* counsel could bind FRTC, which had its own counsel, or support an inference of an agreement by FRTC. Additionally, the letter made no reference to tax-minimizing transfers, and the quoted statement of "agreement" can be understood to relate only to the appointment of CSB as a special fiduciary for Moyer. Thus, the letter does not offer a basis on which to infer an agreement by FRTC.

(3)   Plaintiffs were reluctant to agree to a settlement of the conservatorship proceeding through the appointment of CSB as a special fiduciary. Plaintiffs insisted that transfers from the revocable trust should be exclusively within the authority of CSB. Moyer, through counsel, insisted that FRTC, as trustee, must have a say in the transfer of assets. In a letter of November 8, 2012, Baer expressed her concern that plaintiffs' failure to agree was preventing FRTC from making transfers of assets from the revocable trust that would benefit plaintiffs:

> "After speaking extensively with you *** yesterday in the hopes of achieving a settlement in the above-entitled matter, it appears we have reached an impasse. The outstanding issue seems to be who will have the authority to withdraw assets from Mr. Moyer's Trust for the purpose of gifting designed to benefit your clients and their children.
>
> "*****
>
> "*FRTC, upon the recommendation of [its legal counsel], wants to make gifts to trust for the benefit of your clients which have the potential of saving your clients significant estate taxes. It appears we have agreement on all terms related to this save and except for who has the authority to withdraw assets from the Trust for purposes of gifting.* It is

your position that CSB should have the sole authority to select and withdraw assets from Mr. Moyer's Trust without the consent or approval of FRTC. This is unacceptable to our client and unacceptable to FRTC. We have proposed that FRTC have the authority to withdraw assets from Mr. Moyer's Trust for purposes of gifting subject to the consent of CSB. CSB and Kim Moyer are in agreement with this proposal. You have rejected this proposal. Your intransigence on this issue will likely result in no gifting taking place, to the detriment of your clients.

"We disagree with your assertion that FRTC is just a trustee and, as such, only has the authority to administer Mr. Moyer's Trust. Our position, and that of FRTC, is consistent with Mr. Moyer's directives made at a time when he was capable of doing so. Mr. Moyer carefully selected FRTC and entrusted them to manage his assets in the event of his death or incapacity. Mr. Moyer expressly directed FRTC to keep his real estate portfolio intact and maintain control of his assets. Mr. Moyer was so adamant about this that FRTC negotiated language in the Trust relieving them of their duty to diversify. After several meetings, Mr. Moyer trusted that FRTC would manage his assets consistent with his directives. Mr. Moyer's concern, and consistent belief, was that his children would attempt to take control of, and subsequently dismantle, his real estate portfolio for their immediate financial gain. In light of the foregoing, the suggestion that CSB, or anyone other than FRTC, should be given sole discretion to select and withdraw assets from Mr. Moyer's Trust is untenable. It would be a breach of FRTC's fiduciary duty to Mr. Moyer to agree to that grant of authority to any third party.

"You have expressed significant dissatisfaction with the 'process' and your involvement therein. You were invited to participate in the process several months ago. You did not follow up on this invitation until recently. *** Quite frankly, you have no right to be a part of the process. However, FRTC solicited and welcomed your input. CSB has also welcomed your input. You have been included and heard in the process. *You may disagree with the response to your input and the gifting decisions made by FRTC and CSB, but those are not your decisions to make.*

"Under the parameters we proposed, gifting can only occur with the agreement of both FRTC and CSB. One cannot act without the other. Furthermore, your ongoing

participation and input in the process is welcome. Please do not lose sight of the fact that your clients and their children have the most to gain by FRTC's proposal. Consequently, the risk in not resolving this impasse is entirely borne by you and your clients."

(Emphases added.) Pointing to the letter's statements that "FRTC *** wants to make gifts to trust for the benefit of your clients," and "It appears we have agreement on all terms related to this," plaintiffs contend that the statements support an inference of an agreement by FRTC to make the specific transfers described in the letter of August 28, 2012. Once again, there is no evidence that representations by Baer, who was Moyer's counsel, could bind or support an inference of agreement by FRTC. Additionally, the quoted statement relating to FRTC's desire to make gifts does not support an inference of an agreement by FRTC, let alone an agreement to make specific tax-minimizing transfers. And the statement that "we have agreement on all terms related to this" must, again, be viewed in the context of the settlement of the conservatorship matter. It did not bear on transfers that FRTC might make for plaintiffs' benefit from the revocable trust. In fact, like the letter of August 28, 2012, the letter of November 8, 2012, expressly emphasized that, although plaintiffs were invited to contribute their ideas, the final decisions concerning "gifting" would rest with FRTC and CSB: "You may disagree with the response to your input and the gifting decisions made by FRTC and CSB, but those are not your decisions to make."

(4) Plaintiffs ultimately agreed to settle the conservatorship proceeding by the appointment of CSB as "special fiduciary," and it is this agreement to settle that plaintiffs assert gave rise to the implied-in-fact agreement relating to tax-minimizing transfers. The stipulated limited judgment entered by the court in November 2012 authorized CSB:

"a. To make gifts, create trusts, and otherwise engage in estate planning on behalf of Mr. Moyer. For purposes hereof, 'estate planning' shall be interpreted broadly and shall include, but not be limited to, creation of grantor trusts, creation of mirror-image trusts, creation of non-grantor trusts, gifting, and sales of assets. All estate

planning actions shall be consistent with Mr. Moyer's existing estate plan as embodied in the Trust;

"b.    The aggregate gifts made by the Special Fiduciary shall not exceed $60,000,000 in value (on a fair market value basis for purposes of federal gift tax) without prior Court approval."

The stipulated limited judgment further authorized FRTC "to make distributions from the Trust to Columbia State Bank in its capacity as Special Fiduciary, for the purpose of estate planning and/or gifting." Plaintiffs view the stipulated limited judgment as the capstone of the implied-in-fact contract: Plaintiffs, they assert, agreed to settle the conservatorship matter by the appointment of CSB as special fiduciary in exchange for FRTC's promise to make certain tax-minimizing transfers of assets from the revocable trust to separate trusts for plaintiffs' benefit. Once again, contrary to plaintiffs' contention, the document makes no reference to an agreement by FRTC to carry out specific transactions and describes no obligation on the part of FRTC from which such an agreement can be inferred. Plaintiffs allege that negotiations leading up to the settlement included that promise, but there is no evidence in the record that supports plaintiffs contentions that FRTC made that promise or that the reason plaintiffs settled the conservatorship proceeding was because FRTC promised that it would make tax-minimizing transfers from the revocable trust.

Thus, we conclude that none of the cited documents separately supports an inference of an agreement or promise by FRTC to make tax-minimizing transfers that were proposed by plaintiffs or referenced by FRTC in the letter of August 28. We also reject plaintiffs' contention that the documents together allow an inference of an agreement between plaintiffs and FRTC that FRTC would make certain transfers from the revocable trust. Although it is clear from the documents that the parties contemplated and developed mechanisms for the transfer of assets from the revocable trust as a component of estate planning, the documents, individually and collectively, when viewed in the light most favorable to plaintiffs, do not allow an inference of a promise by FRTC to plaintiffs or an agreement between

FRTC and plaintiffs that specific transfers would be made for tax-minimizing purposes. Indeed, considered together, the documents reflect FRTC's consistent resistance to pressure from plaintiffs to make any particular tax-minimizing transfers suggested by plaintiffs. There is certainly no evidence that FRTC considered itself bound to make specific tax-minimizing transfers proposed by plaintiffs.[11]

We also reject plaintiff's contention that the third amended complaint's allegations of a promise by FRTC were "substantively verified" by a declaration from their counsel.[12]

_____

[11] Our conclusion that there is no evidence in the record that FRTC considered itself bound to make any particular tax-minimizing transfers suggested by plaintiffs is consistent with a letter from FRTC's counsel to plaintiffs' counsel in May 2013, in which FRTC sought plaintiffs' input on certain tax-minimizing strategies that it was *considering*:

"As you know, [FRTC] has been considering various gifting proposals for Mr. Moyer. I want to let you know in advance of our meeting on Thursday some of the proposals that we are considering. Please let us know what you think of the following proposals, or let us know what additional information you would need to consider these proposals:

"1. Gift Mr. Moyer's three vacation homes to the mirror trusts, either as tenants in common or in an LLC, or possibly gifting individual properties to each of the four mirror trusts.

"2. Disclaim/renounce Mr. Moyer's interest in the Marilyn Moyer Trust. This has been discussed in detail previously, [so] you are familiar with this proposal.

"3. Gift to the mirror trusts the existing notes payable from the mirror trusts to Mr. Moyer.

"4. Gift a small percentage interest in Tom Moyer Theatres to the mirror trusts.

"We will discuss these proposals with you in greater detail at our meeting on Thursday, so that you will have an opportunity to comment on them, and so that we can receive the benefit of your thinking."

[12] Plaintiffs' attorney provided a declaration stating:

"I discussed strategies proposed by me and strategies proposed by others, including [FRTC] and its representatives. *There was a promise by [FRTC], through its lawyer \*\*\*, to develop and implement estate planning, and an expressed purpose of mitigating estate taxes.* However, [FRTC] never acted to implement various proposals made by me and by their own counsel, and without good cause. Among the proposals was a strategy that involved transferring assets from Mr. Moyer's trust into existing trusts for the benefit of plaintiffs and their siblings prior to Mr. Moyer's death. As a direct result of [FRTC's] refusal and failure to make transfers of voting shares, rather than non-voting shares, the estate was required to pay significantly more money in taxes upon the death of Mr. Moyer than would have been required had the voting interests been transferred."

(Emphasis added.)

The lawyer's statements merely reiterated allegations of the complaint without providing any evidence of the alleged promise. *See* ORCP 47 D ("[T]he adverse party's response, by affidavits, declarations, or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial[.]"). In short, we conclude that the evidence in the record on summary judgment does not give rise to a genuine issue of material fact as to the existence of a mutual agreement by FRTC and plaintiffs to implement specific tax-minimizing transfers urged by plaintiffs.

Plaintiffs argue in their brief that they

"have never contended that [FRTC] had <u>bound</u> itself to implement these particular proposals. Rather, plaintiffs have contended that [FRTC] bound itself, generally, to develop and implement estate tax savings proposals; that the particular five proposals were good examples of tax saving proposals; and that, <u>absent some good reason</u> that [FRTC] has never provided, all of them <u>should</u> have been implemented."

(Underscoring in plaintiffs' brief.) We find plaintiffs' argument challenging to understand. In one sentence, plaintiffs disclaim any contention that FRTC was bound to implement *specific* proposals; in the next sentence they contend that, absent "some good reason," FRTC should have implemented each of the transfers outlined in the letter of August 28. In their third amended complaint, plaintiffs alleged that FRTC agreed to "implement defendants' estate planning proposals that were to involve aggregate taxable gifts in an amount between $38 million to $60 million, and result in an estimated transfer tax savings of $9.6 million to $20 million."[13] And in their brief, plaintiffs assert:

---

[13] In their complaint, plaintiffs alleged that FRTC had expressly or impliedly agreed to:

"a. undertake a comprehensive review of Mr. Moyer's estate and estate tax situation;

"b. identify all relevant estate planning techniques that would be available given the size and character of Mr. Moyer's estate including, but not limited to, gifts, transfers to new or existing trusts, entity formations or reorganizations, valuation adjustment planning and other forms of transfer that could be employed to minimize the estate tax liability upon Mr. Moyer's death;

> "[FRTC's] failure to develop and implement [estate planning proposals to minimize the transfer taxes] included four of the five transactions FRTC proposed in the August 28, 2012 letter as well as two of the four proposals FRTC and the other defendants made in a May 20, 2013 email."

Thus, it would seem that plaintiffs do indeed assert that FRTC breached the alleged implied-in-fact agreement by not making the specific transfers from the revocable trust to the mirror-image trusts that had been identified in FRTC's letter of August 28 or urged by plaintiffs.

But even if the alleged agreement, either express or implied, was as general as plaintiffs now assert in their briefs—"to develop and implement estate tax savings proposals"—we would conclude that the evidence in the summary judgment record is insufficient to allow a factfinder to find that the parties had a mutual agreement to that effect. The trial court did not err in granting FRTC's motion for summary judgment.

In its cross-appeal of the supplemental judgment, FRTC asserts that the trial court erred in rejecting its petition for attorney fees for failure to plead an entitlement to fees under the proper statute. Whether a party is entitled to an award of attorney fees is a legal question, *Morgan v. Goodsell*, 198 Or App 385, 390, 108 P3d 612, *rev den*, 399 Or 406 (2005), and we review the trial court's denial of fees for legal error. *Rymer v. Zwingli*, 240 Or App 687, 691, 247 P3d 1246, *rev den*, 350 Or 716 (2011).

---

"c. implement all identified estate planning techniques that were practical to employ and would be expected to generate estate tax savings that merited the effort; and to that end implement defendants' estate planning proposals that were to involve aggregate taxable gifts in an amount between $38 million to $60 million, and result in an estimated transfer tax savings of $9.6 million to $20 million;

"d. leverage the selected techniques in order to provide the greatest possible benefit at the lowest cost;

"e. exercise their best professional efforts and professional judgment in accomplishing the foregoing;

"f. accomplish the foregoing at the standard of expert estate planning, commensurate with the size, complexity and character of Mr. Moyer's estate; and

"g. engage in a collaborative process with plaintiffs' lawyers to accomplish the foregoing, with plaintiffs' lawyer serving an integral role in the process."

In its answer to plaintiffs' third amended complaint, FRTC alleged that it was entitled to attorney fees under the terms of the trust instrument. In its petition for attorney fees under ORCP 68, FRTC asserted that it was entitled to fees under ORS 130.815, which allows the court to award fees to any party in a "judicial proceeding involving the validity or administration of a trust." Plaintiffs objected, arguing that FRTC had not adequately pleaded the basis for an award of attorney fees under ORCP 68 C(2)(a), which requires a party seeking fees to allege "the facts, statute, or rule" for awarding such fees. The trial court agreed, rejecting FRTC's petition for the reason that FRTC's factual allegations were "too vague to meet the standard" for alleging facts under ORCP 68 C(2)(a). The court said, further, that by expressly pleading an entitlement to fees under the trust agreement, FRTC deprived plaintiffs of fair notice that it would also seek fees under ORS 130.815.

Plaintiffs' claims against the trustee of the revocable trust necessarily related to trust property and, even if characterized as a breach of contract, the claims arose out of FRTC's role, as trustee, in the administration of the trust. Thus, we conclude that the claims, while styled as claims for breach of contract, were subject to ORS 130.185.

We further conclude that plaintiffs' responsive pleadings satisfied ORCP 68 C(2)(a). ORCP 68 C(2)(a) provides that "[a] party seeking attorney fees shall allege the facts, statute, or rule that provides a basis for the award of fees in a pleading filed by that party." It is not necessary under the rule to allege a specific statutory basis for attorney fees. *Rymer*, 240 Or App at 691. Rather, the pleading requirement is satisfied when: (1) the facts alleged in a party's pleadings provide the basis for such an award; (2) the parties in the case have fairly been alerted that attorney fees would be sought; and (3) no prejudice would result. *Id.*; *see Page and Page*, 103 Or App 431, 434, 797 P2d 408 (1990) ("It is not necessary to specify the statutory basis of a request for fees when the facts asserted would provide a basis for an award of fees, the parties have fairly been alerted that attorney fees would be sought and no prejudice would result.").

The threshold inquiry is whether the pleadings at issue adequately allege the facts that provide the basis for the party's entitlement to fees. *Bruce v. Cascade Collections, Inc.*, 199 Or App 59, 66, 110 P3d 587, *rev den*, 339 Or 66 (2005). "The allegations of fact must clearly relate to the source of the attorney-fee entitlement, whether the source is a statutory or contractual provision." *Page*, 103 Or App at 434. If the source is a statute, the allegations must include all facts that must be proved to meet the statutory criteria for an award. *Id.* Here, the alleged facts met that standard. ORS 130.815 provides:

> "In a judicial proceeding involving the validity or administration of a trust, the court may award costs and expenses and reasonable attorney's fees to any party, to be paid by another party or from the trust."

Although FRTC did not cite ORS 130.815 in its pleadings, it alleged facts in its answer and affirmative defenses that brought the claim within ORS 130.815.[14] For example, FRTC alleged that plaintiffs' lawsuit was an action involving the Thomas P. Moyer Revocable Living Trust, of which FRTC is the trustee, and that plaintiffs' claims challenged FRTC's administration of the trust. Those allegations satisfied the statutory criteria for fees.

The pleadings must also have been sufficient to alert the other party that attorney fees would be sought. *Rymer*, 240 Or App at 691. FRTC pleaded an entitlement to fees, citing the trust as the source; thus, plaintiffs were aware that FRTC would be seeking fees. Contrary to the trial court's apparent assumption, it was not necessary for the pleadings to have alerted plaintiffs that fees would be sought specifically under ORS 130.815. *See, e.g.*, *Al-Ani v. Wafeek*, 300 Or App 710, 455 P3d 1006 (2019) (pleading of inapplicable statutory provision as source for attorney fees did not preclude an award under the correct statute not cited, where pleadings alleged facts sufficient to satisfy the criteria for an award under the correct statute).

---

[14] FRTC observes that the attorney fees it incurred in defending against plaintiffs' action were paid out of the trust assets and that a fee award would accordingly benefit the trust beneficiaries, not FRTC.

Finally, plaintiffs have not alleged how they might be prejudiced by FRTC's failure to cite the statutory source for an award of fees. For all of the above reasons, we conclude that the trial court erred in concluding that it lacked authority to award FRTC fees, and we therefore reverse the supplemental judgment and remand for reconsideration of FRTC's attorney-fee petition.

On appeal, general judgment affirmed; on cross-appeal, supplemental judgment reversed and remanded.