Argued and submitted January 17, 2020; limited judgment dismissing plaintiffs' sixth claim for relief against defendant Columbia State Bank reversed and remanded, otherwise affirmed December 15, 2021; petition for review denied May 5, 2022 (369 Or 705)

Thomas P. MOYER, Jr.;
Colleen Moyer Thrift; Ian Moyer;
Patrick Moyer; Michael Thrift;
and Ashley Craven,
*Plaintiffs-Appellants,*

*v.*

COLUMBIA STATE BANK,
a Washington chartered bank;
Miller Nash Graham & Dunn LLP,
an Oregon limited liability partnership;
and Duffy Kekel LLP,
an Oregon limited liability partnership,
*Defendants-Respondents,*

*and*

FIRST REPUBLIC BANK,
a California chartered bank,
dba First Republic Trust Company,
*Defendant.*

Multnomah County Circuit Court
16CV39229; A168182

505 P3d 26

Plaintiffs appeal from a limited judgment dismissing their third amended complaint against defendants Columbia State Bank (Columbia State), Miller Nash Graham & Dunn LLP (Miller Nash), and Duffy Kekel LLP (Duffy Kekel). Plaintiffs raise 10 assignments of error, all contending that the trial court erred as a matter of law when it concluded that plaintiffs had not stated ultimate facts sufficient to constitute their claims. *Held*: The trial court erred in dismissing plaintiffs' sixth claim for relief for breach of contract against Columbia State, because plaintiffs sufficiently alleged ultimate facts constituting a claim for relief to survive a motion to dismiss. However, the trial court did not err in dismissing any of the other claims for relief against either Columbia State or the law firm defendants, Miller Nash and Duffy Kekel.

Limited judgment dismissing plaintiffs' sixth claim for relief against defendant Columbia State Bank reversed and remanded; otherwise affirmed.

Leslie G. Bottomly, Judge.

John W. Stephens argued the cause for appellants. Also on the briefs was Esler Stephens & Buckley LLP.

Paul Southwick argued the cause for respondent Columbia State Bank. Also on the brief were John F. McGrory, Jr., Ashlee Aguiar, and Davis Wright Tremaine LLP.

Peter R. Mersereau argued the cause for respondent Miller Nash Graham & Dunn LLP. Also on the brief were Blake H. Fry and Mersereau Shannon LLP.

Brian R. Talcott argued the cause for respondent Duffy Kekel LLP. Also on the brief were Elizabeth C. Knight and Dunn Carney Allen Higgins & Tongue LLP.

Before Ortega, Presiding Judge, and DeHoog, Judge, and Shorr, Judge.

SHORR, J.

Limited judgment dismissing plaintiffs' sixth claim for relief against defendant Columbia State Bank reversed and remanded; otherwise affirmed.

**SHORR, J.**

Plaintiffs appeal from a limited judgment dismissing their third amended complaint against defendants Columbia State Bank (Columbia State), Miller Nash Graham & Dunn LLP (Miller Nash), and Duffy Kekel LLP (Duffy Kekel). Plaintiffs raise 10 assignments of error. For the reasons discussed below, we agree with plaintiffs on their first assignment of error, which contends that the trial court erred in dismissing plaintiffs' breach of contract claim against Columbia State. As we discuss, however, we reject plaintiffs' second through eighth assignments of error. Finally, we reject plaintiffs' ninth and tenth assignments of error without discussion. As a result, we reverse the limited judgment to the extent that it dismisses plaintiffs' sixth claim for relief for breach of contract against Columbia State and remand for further proceedings on that claim, but we otherwise affirm the limited judgment's dismissal of all other claims.

When we review a trial court's decision to dismiss a complaint for failure to state ultimate facts sufficient to constitute a claim pursuant to ORCP 21 A(8), "we assume that all well-pleaded facts are true and give plaintiff the benefit of all favorable inferences that reasonably may be drawn from those factual allegations." *Piazza v. Kellim*, 360 Or 58, 61, 377 P3d 492 (2016).[1] We state the facts in accordance with that standard.

## I.   THE BACKGROUND TO THIS DISPUTE AND PLAINTIFFS' ALLEGATIONS AGAINST DEFENDANTS

A. *Proceedings Leading to the Stipulated Limited Judgment Resolving the Thomas P. Moyer Sr. Conservatorship Litigation*

This case is one of a number of disputes involving family members of the late Thomas P. Moyer Sr. that relate to his or various family trust assets. *See, e.g.*, *Hawkins v.*

---

[1] The complaint in this case was attached to, and incorporated by reference, a number of letters and filings related to a conservatorship proceeding involving Thomas P. Moyer Sr. All parties treat those documents as part of the complaint. As a result, our standard of review also applies to the documents incorporated into the complaint. *Kutz v. Lee*, 291 Or App 470, 472, 422 P3d 362 (2018).

*1000 Limited Partnership*, 282 Or App 735, 738, 388 P3d 347 (2016), *rev den*, 361 Or 543 (2017) (describing an "inter-family dispute" regarding the ownership and management of the 1000 Broadway Building, developed by Moyer Sr.). During his lifetime, Moyer Sr. was a real estate developer in the Portland area. *Id*. at 739-40.

Plaintiffs are several (but not all) of Moyer Sr.'s children and grandchildren. The current litigation arose after Moyer Sr. was diagnosed with advanced Alzheimer's disease in 2010. Moyer Sr. had previously established a trust, the Thomas P. Moyer Revocable Living Trust, dated July 25, 2007 (Trust). Plaintiffs allege that the Trust was to be administered for the benefit of Moyer Sr. during his lifetime, and then, following his death, for his four children and 13 grandchildren. The Trust was revocable during Moyer Sr.'s lifetime but became irrevocable upon his death. In July 2010, Moyer Sr. resigned as trustee of the Trust and appointed First Republic Trust Co. (First Republic) as the new trustee.

In 2012, two of the plaintiffs to this dispute, Thomas Moyer Jr. and Colleen Moyer Thrift, as well as a third child of Moyer Sr., Tim Moyer, petitioned the Multnomah County Circuit Court for appointment of a conservator and a guardian for Moyer Sr. due to his Alzheimer's diagnosis. They claimed that a conservator was necessary to "evaluate whether any actions can be taken to minimize [the estate's] tax burden, and to take such actions if deemed appropriate." Plaintiffs ultimately wanted a third-party professional to oversee gifts that could also reduce the tax burden on Moyer Sr.'s estate upon his death. Moyer Sr. and his daughter Kimberly Moyer filed objections to the petition. First Republic, the trustee to the Trust, also filed an objection.

As part of a process to resolve the conservatorship petition, John Draneas, the attorney for, among others, plaintiffs Thomas Moyer Jr. and Colleen Thrift, engaged in deliberations with the attorneys for the various interested, but not all named, parties to that proceeding. Draneas engaged in substantive exchanges about the conservatorship proceeding with the attorney for Moyer Sr., as well as defendant Duffy Kekel, the law firm representing defendant

First Republic.[2] Some of those exchanges were reflected in various correspondence circulated among the attorneys. Plaintiffs contend that defendant Miller Nash, the attorney for Columbia State, was also provided with some of this information, and that Miller Nash and Columbia State, among others, were part of the discussions to resolve the conservatorship proceeding.

Ultimately, following a negotiation among the interested parties, defendant Columbia State was appointed by the court, pursuant to a Stipulated Limited Judgment, as a "Special Fiduciary" under ORS 125.010(3)(d) and a "Special Representative" under ORS 130.120 on behalf of Moyer Sr. The Stipulated Limited Judgment empowered Columbia State to "make gifts *** and otherwise engage in estate planning on behalf of Mr. Moyer [Sr.]" and provided that the "aggregate gifts made by the Special Fiduciary shall not exceed $60,000,000 in value" without prior court approval. It authorized First Republic to make distributions from the Trust for estate planning and gifting purposes. It also provided that Columbia State would be paid out of the Trust and that Columbia State would engage Miller Nash to provide legal services to it in its capacity as special representative and special fiduciary.

B. *Plaintiffs allege defendants directly promised plaintiffs that defendants would carry out estate planning proposals to reduce Moyer Sr.'s estate taxes and direct gifts for the benefit of the Trust beneficiaries.*

Plaintiffs contend that in the course of negotiations that led to that Stipulated Limited Judgment, and as reflected in that judgment, defendants made certain direct promises to plaintiffs. It is those direct promises that plaintiffs contend are the basis for their breach of contract claims against defendants. The precise nature of some of those alleged promises is hard to pin down. However, we understand plaintiffs to allege certain express promises made by First Republic, Columbia State, and Duffy Kekel to plaintiffs, which all boil down to the following allegation that is

---

[2] First Republic was a named defendant in the trial court litigation but is not a party to this appeal.

repeated either verbatim or in similar form throughout plaintiffs' complaint: namely, that those defendants had promised "to develop and carry out (implement) estate planning proposals for Mr. [Moyer Sr.]'s estate with the objective (to accomplish the result) of minimizing the transfer taxes that might become due upon the death of Mr. Moyer [Sr.]."[3] What those specific proposals were to be is left somewhat vague in the complaint. Plaintiffs contend that First Republic and Columbia State purportedly promised to implement estate planning proposals that would "involve aggregate taxable gifts in an amount between $38 million to $60 million and result[] in an estimated transfer tax savings of $9.6 million to $20 million." Plaintiffs then list general procedures that First Republic and Columbia State promised to undertake, such as engaging in a comprehensive review of Moyer Sr.'s estate and then identifying and implementing estate planning techniques to accomplish those savings. Plaintiffs also contend that those defendants were to work with plaintiffs' attorney to accomplish the foregoing.

In support of their "direct" breach of contract claims, plaintiffs also generally rely on alleged "implied" promises that plaintiffs claim defendants made in the course of and perhaps following the negotiations that led to the resolution of the conservatorship proceeding that resulted in the Stipulated Limited Judgment. Plaintiffs incorporate into their complaint various correspondence between plaintiffs' lawyer and either Moyer Sr.'s lawyer or First Republic's lawyers, Duffy Kekel. Plaintiffs do not allege any *specific* gifts or tax savings measures that any defendant promised to undertake or assist with.

Plaintiffs point to an August 28, 2012, letter from Duffy Kekel sent on behalf of its client First Republic to plaintiffs' lawyer that mentions that "we are considering several possible transactions." After listing those considered transactions, the letter notes that, "[u]ltimately, the decision to adopt one of these proposals, or to adopt other proposals, lies with the parties who have previously been designated by

---

[3] Duffy Kekel contends that plaintiffs never clearly allege that Duffy Kekel made any express or implied promise to plaintiffs to implement estate planning to minimize transfer taxes. However, as we discuss below, we do not need to resolve that issue.

Mr. Moyer [Sr.] to carry out his estate plan, but we nevertheless wish to receive your comments." Plaintiffs allege that the Stipulated Limited Judgment provided Columbia State with the power to "make gifts, create trusts, and otherwise engage in estate planning on behalf of Mr. Moyer [Sr.] * * * consistent with Mr. [Moyer Sr.]'s existing estate plan as embodied in the Trust." The judgment provided that "[t]he aggregate gifts made by [Columbia State] shall not exceed $60,000,000 in value" and that First Republic was authorized to make distributions from the Trust to Columbia State for estate planning and gifting, subject to the consent of Columbia State. In their briefing to us, plaintiffs acknowledge that the judgment "did not specify specific actions to be taken because it was up to First Republic/Duffy Kekel and Columbia State/Miller Nash (not the Court) to develop and implement the specific estate planning proposals, with the assistance of plaintiff's [*sic*] lawyers."

Plaintiffs allege that, after the entry of the judgment, defendants "acted to develop and carry out (implement) only <u>one</u> estate planning proposal for Mr. [Moyer Sr.]'s estate that had the objective of reducing the transfer taxes that might become due upon the death of Mr. Moyer [Sr.]," namely a proposal concerning a Moyer-related entity called D. Park Corp. (Underscore in original.) We do not need to explain that complex transaction in detail. In the end, some "mirror-image trusts" that benefited Moyer Sr.'s children and other beneficiaries were established and funded with nonvoting shares of D. Park Corp. Plaintiffs allege that a transfer of voting shares would have been more beneficial towards reducing the estate taxes, and claim that they proposed that to defendants. Plaintiffs claim that defendants rejected that proposal, and allege that their "proposed improvements by (on behalf of) plaintiffs were just that: proposals." Plaintiffs maintain that defendants "had promised and were under a duty, independent of any proposals by plaintiffs, to develop and carry out (implement) estate planning proposals for Mr. [Moyer Sr.]'s estate with the objective (to accomplish the result) of minimizing the transfer taxes that might become due upon the death of [Moyer Sr.,] all for the benefit of plaintiffs and of the other beneficiaries of the Trust." Ultimately, Moyer Sr. died on November 28, 2014,

when, plaintiffs allege, only two other proposals that reduced transfer taxes had been completed. Plaintiffs assign blame to defendants for not completing further transactions.

Because it is relevant to our analysis below, we also summarize the allegations that plaintiffs contend support the consideration element of their direct breach of contract claims. Plaintiffs allege that they agreed to the appointment of Columbia State as a special fiduciary and special representative to Moyer Sr. in reliance on Columbia State's promises to develop and carry out estate planning proposals that would minimize the transfer taxes owed by the estate. Plaintiffs also allege that Columbia State accepted that appointment contingent upon approval by the court. With respect to defendants Columbia State and Duffy Kekel, plaintiffs also allege, in general terms, that they "received consideration for the promises" such that each was to be compensated and was compensated by the Trust "for developing and carrying out (implementing) estate planning proposals."

C.  *Plaintiffs allege that they were the indirect beneficiaries of promises made by defendants to Moyer Sr. and others to reduce estate taxes and provide gifts for the benefit of the Trust beneficiaries.*

In addition to plaintiffs' allegations that certain defendants made direct promises to them, plaintiffs also contend that they were the beneficiaries of indirect promises made by defendants to *other* parties as to which plaintiffs allege that they were the intended beneficiaries. As to Columbia State, plaintiffs point to allegations that Columbia State promised to Moyer Sr. (and perhaps to First Republic as well) that it would "develop and carry out (implement) estate planning proposals for [Moyer Sr.'s] estate with the objective (to accomplish the result) of minimizing the transfer taxes that might become due upon the death of [Moyer Sr.]." As to Duffy Kekel, plaintiffs allege that the firm promised its client First Republic that Duffy Kekel would "provide legal services to assist First Republic in the discharge of its promises and duties" to minimize taxes, such "promised performance being for the intended benefit of plaintiffs" and other Trust beneficiaries. As to Miller Nash, plaintiffs

similarly point to Miller Nash's alleged promise to its client Columbia State to provide legal services to assist Columbia State in the discharge of its similar promises and duties that were alleged to have been intended to benefit plaintiffs. Plaintiffs contend that the law firms were to provide legal services to assist their clients in implementing estate planning proposals that were to involve "aggregate taxable gifts in an amount between $38 million to $60 million and resulting in an estimated transfer tax savings of $9.6 million to $20 million."

## II.   THE PROCEDURAL HISTORY AND THE MOTIONS TO DISMISS

Certain defendants moved to dismiss plaintiffs' first, second, and third amended complaints. The trial court granted the motions to dismiss the first and second amended complaints, which initially only pleaded claims for negligence, but permitted plaintiffs the opportunity to replead each time. The trial court dismissed the complaints because it concluded that plaintiffs had not alleged a specific enough promise by defendants such that defendants had undertaken a legal duty to protect plaintiffs for which they could be held liable for negligence. Plaintiffs then filed a third amended complaint that added the breach of contract claims against defendants. As discussed above, plaintiffs asserted breach of contract claims that alleged that defendants had made direct promises to plaintiffs that defendants had then breached. Plaintiffs also alleged that defendants had entered into contracts with *others* for which plaintiffs were the indirect but intended beneficiaries. Those claims largely restated the same allegations that had formed the basis for the previously dismissed negligence claims. Defendants to this appeal moved to dismiss that third amended complaint.

The trial court granted the motion to dismiss the third amended complaint with prejudice. The court did not issue a ruling from the bench or write an opinion. Rather, the trial court issued an order generally dismissing plaintiffs' third amended complaint against defendants Columbia State, Miller Nash, and Duffy Kekel with prejudice, and then later entered a limited judgment dismissing the defendants

to this appeal.[4] As noted, plaintiffs appeal from that limited judgment.

### III.   LEGAL ANALYSIS

"We review the trial court's grant of the motion to dismiss for failure to state a claim for legal error." *Skille v. Martinez*, 288 Or App 207, 210, 406 P3d 126, *adh'd to as modified on recons*, 289 Or App 637, 407 P3d 998 (2017). The Oregon Rules of Civil Procedure require only that a complaint contain a "plain and concise statement of the ultimate facts constituting a claim for relief." ORCP 18 A.

We divide our legal analysis into two primary sections. First, we address what we have referred to as the direct breach of contract claims, which were based on promises that plaintiffs claim were made directly to them. Those claims relate to plaintiffs' first and second assignments of error. Second, we discuss together the third-party beneficiary contract and negligence claims, which are all primarily based on the notion that defendants made promises to third parties that were intended to benefit plaintiffs such that the promises created a legal duty that defendants then owed to plaintiffs. Those claims relate to plaintiffs' third, fourth, fifth, and seventh assignments of error. We also briefly address plaintiffs' sixth and eighth assignments of error, which involve claims based on an alleged "special relationship" between plaintiffs and Columbia State and Duffy Kekel, within that second section.

A.   *The Direct Breach of Contract Claims: Plaintiffs' First and Second Assignments of Error*

"To state a claim for breach of contract, plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach[,] and defendant's breach resulting in damage to plaintiff." *Slover v. State Board of Clinical Social Workers*, 144 Or App 565, 570,

---

[4] Plaintiffs' nearly identical claims against defendant First Republic continued to be litigated through summary judgment. The trial court later granted summary judgment to First Republic and dismissed those claims as well. We recently affirmed that grant of summary judgment in *Moyer v. Columbia State Bank*, 315 Or App 728, 730, 503 P3d 472 (2021). A more extensive background of the facts relating to the overall dispute, albeit in the context of a summary-judgment motion, is set forth in that opinion.

927 P2d 1098 (1996) (internal quotation marks omitted). A contract is "most commonly formed by an offer, an acceptance of that offer, and an exchange of consideration." *Moro v. State of Oregon*, 357 Or 167, 196, 351 P3d 1 (2015). A plaintiff must plead consideration. *See Kornbrodt v. Equitable Trust Co.*, 137 Or 386, 392, 3 P2d 127 (1931) (stating that "consideration must be proved, and consequently it should be stated"). "A claim will survive a motion to dismiss if the complaint contains even vague allegations of all material facts." *Slover*, 144 Or App at 571 (internal quotation marks omitted). Plaintiffs contend that their sixth and eighth claims pleaded sufficient ultimate facts to state breach of contract claims against Columbia State and Duffy Kekel, respectively, to survive the motions to dismiss.

We address the allegations as to defendants Columbia State and Duffy Kekel separately, because the alleged contracts, while sharing some general terms, are distinct. Columbia State, for its part, contends that plaintiffs' breach of contract claim fails to allege that there was any offer and acceptance communicated between the parties, any consideration exchanged, or any contention that Columbia State caused plaintiffs any damages. We address each argument in turn and ultimately conclude that plaintiffs have sufficiently alleged the elements of a breach of contract claim against Columbia State. Any further dispute about the evidence in support of that contract is an issue of fact that can be addressed in further proceedings.

Columbia State first contends that plaintiffs do not allege that Columbia State made a promise or offer that plaintiffs accepted. Plaintiffs' response is two-fold. Plaintiffs contend that they must only plead the existence of a contract and not the underlying elements of contract formation such as offer and acceptance. Alternatively, plaintiffs contend that they have alleged an offer and acceptance. On the first point, the parties do not direct us to any case law that clearly decides whether a plaintiff, in alleging the existence of a contract, also has to allege an underlying offer and acceptance that led to the contract's formation. We need not address that question here, because we agree with plaintiffs' alternative argument that they have sufficiently

alleged that Columbia State made promises to plaintiffs that plaintiffs accepted. Plaintiffs allege that:

> "Columbia State expressly and impliedly promised to * * * plaintiffs Tom Moyer, Jr. and Colleen Thrift * * * to develop and carry out (implement) estate planning proposals for Mr. [Moyer Sr.]'s estate with the objective (to accomplish the result) of minimizing the transfer taxes that might become due upon the death of Mr. Moyer [Sr]."

Plaintiffs further allege that they accepted that offer and agreed in exchange to the appointment of Columbia State as a special fiduciary and special representative:

> "In reliance upon First Republic and Columbia State's promises to develop and carry out (implement) estate planning proposals for Mr. [Moyer Sr.]'s estate to minimize the transfer taxes that might become due upon the death of Mr. Moyer [Sr.] (all for the benefit of plaintiffs and the other beneficiaries of the Trust), plaintiffs agreed to the entry of the Limited Stipulated Judgment, [and] the appointment of Columbia State Bank as Special Fiduciary and Special Representative of the Trust."[5]

Plaintiffs allege that they accepted Columbia State's offer by resolving the conservatorship litigation and accepting Columbia State's appointment and its corresponding duty, at least as alleged by plaintiffs, to develop and carry out certain estate proposals to benefit the estate and plaintiffs. Plaintiffs also allege that Columbia State "accepted the nomination as Special Representative and Special Fiduciary and consented to serve if appointed by the Court."

Columbia State contends that plaintiffs do not sufficiently allege the details of the formation of that contract, arguing, among other things, that the documents attached to the complaint do not prove any direct or even implied promises made from Columbia State *to plaintiffs*. Columbia State also notes that it was not even alleged to have been a party to the conservatorship litigation between plaintiffs

---

[5] Plaintiffs often refer to Columbia State in its complaint as the special representative and special fiduciary "of the Trust," but they also attach documents from the conservatorship proceeding, including the Stipulated Limited Judgment, that refer to Columbia State as the special representative and special fiduciary for Moyer Sr.

and Moyer Sr. nor an entity directly involved with plaintiffs in the negotiated resolution of that litigation. Ultimately, however, we understand Columbia State's argument to contend that plaintiffs must plead further evidence to support the breach of contract claim. We conclude that no such further detail nor supporting evidence was required at the pleading stage of these proceedings. Plaintiffs must plead ultimate facts, as they do here, and not merely state legal conclusions. *Fearing v. Bucher*, 328 Or 367, 371, 977 P2d 1163 (1999). But they are not required under ORCP 18 A to allege evidence. *See* ORCP 18 A (requiring only a "plain and concise statement of the ultimate facts constituting the claim").

        For similar reasons, we also conclude that plaintiffs have alleged sufficient consideration exchanged between the parties. Consideration is "some right, interest, profit or benefit or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *Homestyle Direct, LLC v. DHS*, 354 Or 253, 262, 311 P3d 487 (2013); *see also Restatement (Second) of Contracts* § 71(2) (1981) (defining "consideration" as a performance or return promise "sought by the promisor in exchange for his promise" and "given by the promisee in exchange for that promise"). Consideration is "the basis for a bargain that two parties reach; it is what is sought by the promisor in exchange for a promise and given by the promisee in exchange for the promise." *State v. Villagomez*, 362 Or 390, 397, 412 P3d 183 (2018).

        Although the allegations are not clear as to any precise conversations between plaintiffs and Columbia State, we must draw all reasonable inferences in favor of plaintiffs at this stage. We conclude that plaintiffs have adequately alleged consideration based on the allegations discussed above—namely, that Columbia State promised to undertake certain tax saving measures for the Trust that would benefit plaintiffs in exchange for plaintiffs' acquiescence to Columbia State's appointment as a fiduciary and representative for Moyer Sr. Further, plaintiffs' allegations can reasonably be understood to contend that Columbia State, in turn, agreed to accept that appointment under those conditions. Plaintiffs also allege that Columbia State was to be

compensated for that work, alleging that Columbia State was "to be compensated and [was] compensated from the Trust for developing and carrying out (implementing) the estate planning proposals."

Plaintiffs further allege that they were damaged by Columbia State's breach to the extent that Columbia State (and First Republic) breached the promise to develop and carry out estate planning proposals and caused the estate to pay higher taxes that reduced the ultimate distributions to plaintiffs and all beneficiaries. Plaintiffs allege that the estate planning proposals had been intended to "involve aggregate taxable gifts in an amount between $38 million to $60 million * * * resulting in an estimated transfer tax savings of $9.6 million to $20 million." Whether plaintiffs can ultimately present evidence in support of their claim is not before us. *See Moyer v. Columbia State Bank*, 315 Or App 728, 746, 503 P3d 472 (2021) (affirming the grant of summary judgment against plaintiffs' nearly identical breach-of-contract claims against First Republic). However, plaintiffs have sufficiently alleged ultimate facts to support the elements of a breach of contract claim against Columbia State to survive a motion to dismiss. The trial court erred in concluding otherwise and in dismissing plaintiffs' sixth claim for relief for breach of contract.

We turn to plaintiffs' allegations in their eighth claim for relief that contended that Duffy Kekel similarly breached its contract with plaintiffs. Duffy Kekel raises some of the same arguments raised by Columbia State. We address only one of those arguments, namely that plaintiffs did not sufficiently allege consideration as to its purported contract with Duffy Kekel. We agree and conclude that that argument is dispositive. Unlike the inferences that may reasonably be drawn from the complaint as to Columbia State, we conclude that there are no ultimate facts alleged, nor any favorable inferences that can be reasonably drawn from those facts, that support an exchange of consideration between plaintiffs and Duffy Kekel.

Plaintiffs direct us to the following as the pivotal allegation in support of Duffy Kekel's direct promise to plaintiffs:

> "In 2012, to resolve a controversy that had arisen with respect to the appointment of a conservator or other representative to engage in estate planning for Mr. [Moyer Sr.]'s estate, Duffy Kekel expressly and impliedly promised to, at the very least, First Republic, in its capacity as Trustee for the Trust, and plaintiffs Tom Moyer, Jr. and Colleen Thrift[,] to provide legal services to assist First Republic in the discharge of its promises and duties all with the objective of minimizing the transfer taxes that might become due upon the death of Mr. Moyer [Sr.]"

Setting aside whether plaintiffs have alleged a contract based on Duffy Kekel's alleged promise to plaintiffs to provide legal services to its client First Republic, plaintiffs fail to allege any consideration that Duffy Kekel sought or received in support of that purported contract. As discussed, consideration is "the basis for a bargain that two parties reach; it is what is sought by the promisor in exchange for a promise and given by the promisee in exchange for the promise." *Villagomez*, 362 Or at 397.

Plaintiffs point to their allegation that Duffy Kekel was to be paid and was paid from the Trust "for developing and carrying out (implementing) estate planning proposals." However, plaintiffs do not allege anywhere that Duffy Kekel bargained with plaintiffs for that exchange. Nor could that be a reasonable inference based on the other allegations in the complaint. Indeed, unlike the allegations with respect to Columbia State, that is not a reasonable inference that we can draw, and it is contradicted by the rest of the complaint. Plaintiffs make clear in both their allegations and attachments to the complaint that Duffy Kekel was *already* serving as the law firm *for its client First Republic*, the trustee for the Trust, when plaintiffs started to pursue resolution of the conservatorship proceeding.[6] Duffy Kekel was already retained by the trustee for its work, and there is no allegation or reasonable inference that it continued to be paid for that work based on any consideration negotiated or exchanged with plaintiffs.

---

[6] Plaintiffs' allegations make clear that, while Columbia State was brought on as a special fiduciary and special representative as part of the resolution of the conservatorship proceeding, First Republic was already serving as trustee to the Trust at that point and Duffy Kekel was already serving as First Republic's law firm.

Plaintiffs also contend on appeal that their resolution of the conservatorship proceeding itself provided consideration to Duffy Kekel. But plaintiffs point to no allegation that Duffy Kekel, which, again, was already acting as lawyers for the trustee, sought from plaintiffs for its benefit the dismissal of the conservatorship proceeding or received any benefit as a result of the resolution of that proceeding. Even giving plaintiffs the benefit of all reasonable inferences that may be drawn from their complaint, plaintiffs do not allege any consideration that Duffy Kekel bargained for that would support plaintiffs' alleged contract with that law firm. As a result, the trial court did not err in dismissing plaintiffs' eighth claim for relief for breach of contract against Duffy Kekel.

B.  *The Indirect Third-Party Beneficiary Contract and Negligence Claims: Plaintiffs' Third through Eighth Assignments of Error*

As noted earlier, in addition to the claims based on direct promises made to plaintiffs, plaintiffs also contend that they were the intended third-party beneficiaries of promises that each defendant made to other parties, such as Moyer Sr., or, in the case of the law firm defendants, to their clients Columbia State and First Republic. Plaintiffs contend that those allegations support claims against defendants for both breach of a third-party beneficiary contract and negligence. That is, plaintiffs contend that defendants' promises to third parties that were intended to benefit plaintiffs both created a contractual duty and a duty for which defendants may be liable in negligence when they negligently failed to perform those promises. In plaintiffs' third, fourth, fifth, and seventh assignments of error, plaintiffs contend that the trial court erred in dismissing those third-party beneficiary contract and negligence claims.

The parties agree on what law applies here but disagree on the effect of that law on the viability of plaintiffs' claims. As a general rule, a defendant is not ordinarily liable in negligence for causing purely economic losses to a stranger without injury to the stranger's person or property. *Hale v. Groce*, 304 Or 281, 283-84, 744 P2d 1289 (1987). In *Hale*, the Oregon Supreme Court considered whether a

plaintiff, an intended beneficiary of a will and trust, could bring a claim against a lawyer when the lawyer allegedly failed to follow his client's direction to include a bequest of a specific sum, $300,000, to the plaintiff in the client's testamentary instruments. *Id*. at 283, 288. Were the general rule to apply, the plaintiff could not state a claim against the lawyer, because the plaintiff was not a client of and was essentially a stranger to the lawyer. *Id*. at 283-84. The court, however, recognized an exception where the stranger is a "classic 'intended' third-party beneficiary of the lawyer's promise to his client." *Id*. at 286. The liability, depending on the nature of the claim alleged, might be in contract for breach of the promise or in negligence for the negligent performance that failed to fulfill the promise. *Id*. That promise, however, must be "sufficiently specific to go beyond a general promise by defendant to use [the defendant's] professional skills to carry out the assigned project," which the court called "a matter for proof." *Id*. at 289. As a general matter, "[w]hen an alleged contract does not lend itself to incorporation of a writing in the complaint, the issue at least may have to await affidavits and possible counteraffidavits on motion for summary judgment." *Id*.

In *Hale*, the court concluded that the plaintiff had alleged that the defendant lawyer had made a specific promise to his client "that defendant would prepare a trust document wherein [the client] and plaintiff would be co-trustees and through which plaintiff would receive the gift [that the client] intended her to have." *Id*. at 288. Specifically, the defendant promised his client that he would prepare "a trust document with plaintiff's [$300,000] gift in it." *Id*. The court concluded that such a promise was specific enough to bring plaintiff within the status of an intended third-party beneficiary and sufficient to state contract and negligence claims that should not have been resolved by a motion to dismiss. *Id*. at 289.

In *Caba v. Barker*, the plaintiffs, who were residual legatees of a will, alleged that the defendant lawyer had impliedly promised his client that he would make his client's will "invulnerable to a will contest." 341 Or 534, 536-37, 145 P3d 174 (2006). After the client's death, the will was successfully contested, and the plaintiffs contended that the

settlement of that contest reduced their share of the estate by $103,569.50. *Id*. at 537. The plaintiffs filed breach of contract and negligence claims against the lawyer, contending that they were the intended beneficiaries of the implied contract between the lawyer and his client to make the will invulnerable to contest and were damaged as a result of the lawyer's breach of that promise. *Id*. That claim was dismissed by the trial court on a motion to dismiss. *Id*. at 538.

The Supreme Court affirmed that decision. *Id*. at 541. It held that an implied in fact or law contract could be the basis for an intended third-party beneficiary claim, but that the plaintiffs had not alleged such implied facts or identified an implied-in-law contract. *Id*. at 540-41. The court concluded, "[w]e hold that plaintiffs' allegation of an implied promise to make the will invulnerable to a will contest did not constitute a legally sufficient source of duty and breach to enable plaintiffs to bring their breach of contract and negligence claims." *Id*. at 541.

In *Deberry v. Summers*, we applied *Hale* and *Caba* in the context of another case involving breach of contract and legal malpractice claims. 255 Or App 152, 165, 296 P3d 610 (2013). We said that "[t]he lawyer's promise must be more specific than a general obligation to use his or her best professional efforts with the skill and care customary among lawyers in the relevant community; the lawyer must have agreed to accomplish specific results or objectives for the client." *Id*. at 159. We noted that *Hale*

> "distinguished between a promise to make a particular disposition or to accomplish an intended gift by means specified by the client or by the lawyer's own choosing and a promise to abide by a general standard of skill and care to which the lawyer would be bound independent of the contract. The court held that the former could give rise to a breach of contract by an intended third party beneficiary. By contrast, the latter, sounding in negligence, arises only from the professional's obligation to the client."

*Id*. at 158. We summarized the rule we understood from *Hale* and *Caba*:

> "Taken together, *Hale* and *Caba* stand for the proposition that an essential element of a breach of contract or

negligence claim by a nonclient plaintiff against an attorney who prepared a testamentary instrument is the existence of a promise by the attorney—either express or implied—to include specific provisions to satisfy certain objectives of the client for the benefit of the plaintiff."

*Id*. at 161.

We also applied *Hale* and *Caba* in a case where a nephew claimed that he was the intended beneficiary of a promise by an estate attorney to a client, the nephew's aunt, to "perfect, protect, and effectuate" the client's intent to create an estate plan that passed on her portion of the estate to her nephew. *Frakes v. Nay*, 254 Or App 236, 267-68, 295 P3d 94 (2012), *rev den*, 353 Or 747 (2013). We held that, although it presented a "close question," the "allegations and evidence, when viewed in the light most favorable to [the nephew], established that [the attorney] agreed to create an estate plan to carry out [the client's] testamentary intent *** to leave nearly all of her estate to *** the nephew." *Id*. at 268 (footnote omitted); *see also Sherertz v. Brownstein Rask*, 288 Or App 719, 724, 726, 407 P3d 914 (2017) (noting that, for these claims, the "nature, and specificity, of the promise is important" and that "the plaintiffs could only establish duty by showing that a specific result had been" promised by the attorney to the testator).

We apply those principles to the allegations at issue here. As noted, plaintiffs claim that two law firms, defendants Duffy Kekel and Miller Nash, made promises to their clients, the trustee of the Trust and the court-appointed special fiduciary and special representative to Moyer Sr., respectively. As to Duffy Kekel, plaintiffs primarily rely on the following allegation:

"Duffy Kekel expressly and impliedly promised to, at the very least, First Republic, in its capacity as Trustee of the Trust *** to provide legal services to assist First Republic in the discharge of its promises and duties all with the objective of minimizing the transfer taxes that might become due upon the death of Mr. [Moyer Sr.], and the promised performance being for the intended benefit of plaintiffs and of the other beneficiaries of the Trust. The estate planning proposals were to involve aggregate taxable gifts in an amount between $38 million to $60 million and resulting

in an estimated transfer tax savings of $9.6 million to $20 million. \*\*\* Duffy Kekel expressly or impliedly promised, and were under a duty, to use their best professional efforts to develop and carry out (implement) the estate planning proposals and to accomplish the transfer tax minimization objective with the skill and care customary among estate planning lawyers."

Plaintiffs go on to list various general estate planning steps that the trustee of the Trust allegedly promised to undertake, including to review the Moyer Sr. estate and tax situation and then engage in "estate planning techniques" to "generate estate tax savings." Plaintiffs' allegations against Miller Nash allege identical promises that the firm allegedly made to its client Columbia State to assist that entity in the same efforts of minimizing transfer taxes that might become due upon the death of Moyer Sr.

As we discussed above, plaintiffs do not identify in their complaint any specific gifts or tax-saving measures that defendants had promised to ensure occurred for the benefit of plaintiffs. No doubt, plaintiffs allege that there were discussions among attorneys about considered estate-planning proposals both before and after the Stipulated Limited Judgment. However, plaintiffs do not allege that any defendant made a promise to plaintiffs to ensure any specific gift was made from the Trust or to ensure that any specific tax-saving measure would be accomplished to benefit plaintiffs. On appeal, plaintiffs in their briefing also do not direct us to any allegation of a specific gift or tax-saving measure that any defendant had promised to advise on or undertake for their clients.

Applying the rule announced in *Hale*, we conclude that, even when properly viewing the allegations in the light most favorable to plaintiffs, plaintiffs have not alleged that defendant law firms made promises to their clients that were "sufficiently specific to go beyond a general promise by defendant to use [the defendant's] professional skills to carry out the assigned project" to, as plaintiffs allege here, "develop and carry out (implement) estate planning proposals for Mr. [Moyer Sr.]'s estate with the objective (to accomplish the result) of minimizing the transfer taxes that might become due upon the death of Mr. Moyer [Sr]." *Hale*, 304

Or at 289. As plaintiffs acknowledge in their briefing, the Stipulated Limited Judgment that resolved the dispute over the conservatorship proceeding "did not specify specific actions to be taken because it was up to [defendants] (not the Court) to develop and implement the specific estate planning proposals, with the assistance of plaintiff's [*sic*] lawyers." An attorney's general promise to provide legal services to a trustee or professional fiduciary to assist those parties in minimizing an estate's transfer taxes for the benefit of the trust beneficiaries is not a sufficiently specific promise to create a duty to the beneficiaries. In other words, plaintiffs fail to identify a promise by the lawyer to its client "to include specific provisions to satisfy certain objectives of the client for the benefit of the plaintiff." *Deberry*, 255 Or App at 161. That is so even when couched as a promise by each lawyer to assist its client in developing and carrying out "proposals [that] were to involve aggregate taxable gifts" within a wide $22 million range of $38 to $60 million.

Our courts have concluded that a promise is sufficiently specific to be enforced by a third party where an attorney promised to assist a client in including a specific monetary sum in a will or trust document for the benefit of a particular person, as in *Hale*, or where the attorney agreed to assist the client in passing the balance of her estate to her nephew, as in *Frakes*. Those cases may not define the outer limits of specificity. Nevertheless, general promises by law firms to assist their clients, as alleged here, in "carrying out *** proposals" for entirely unspecified gifts to "minimize" an estate's transfer taxes are not specific enough to create a duty to the third-party beneficiaries. The breach of that alleged duty would not be judged by the failure to provide a particular gift or to follow a client's specific direction as to a provision in the client's estate plan; rather, a court would be left with the general negligence duty of care that *Hale* concluded was not a proper basis for a law firm's liability to nonclients.

We acknowledge that *Hale* stated that whether the alleged promise by the attorney in that case—to include a $300,000 gift to the client's intended beneficiary through testamentary documents—was sufficiently specific to create a duty to that beneficiary "is a matter for proof." 304 Or at

289. *Hale* then stated that the claims in that case would have to await summary judgment, and that the same could also be true for other cases where the alleged contract "does not lend itself to incorporation of a writing in the complaint." *Id*. However, we do not understand *Hale* to conclude that a complaint will survive a motion to dismiss and must await further factual development even if the complaint alleges only general promises to accomplish broad objectives for a client, because proof of those allegations would still fall short of the specificity that the law requires. Accordingly, the trial court did not err in dismissing the claims against the law firm defendants Duffy Kekel and Miller Nash.

We now turn to plaintiffs' similar allegations against Columbia State, the special fiduciary and special representative to Moyer Sr., and conclude that those allegations are indistinguishable from their allegations against the law firms. Plaintiffs allege that Columbia State promised to Moyer Sr. and, perhaps, to First Republic, that it would develop and carry out the same general estate planning and tax-saving proposals set forth above with respect to the law firms. Plaintiffs do not argue that those claims should be judged by a different standard than those applied to plaintiffs' identical claims against the defendant law firms. For the same reasons discussed above, we conclude that the same alleged general promises by Columbia State to Moyer Sr. or First Republic are not sufficient to state either a breach of contract or negligence claim for breach of a duty to an intended third-party beneficiary. As a result, we reject plaintiffs' third, fourth, fifth, and seventh assignments of error that contend that the trial court erred in dismissing their third-party beneficiary breach-of-contract and negligence claims.

Finally, we turn to plaintiffs' sixth and eighth assignments of error. In those assignments, plaintiffs contend that the trial court erred in dismissing their negligence claims against Duffy Kekel and Columbia State that were based on plaintiffs' "special relationship" with those entities. Plaintiffs contend that they stated claims for relief against those defendants for negligence based solely on defendants' *status* as a law firm to the trustee of the Trust, or, in the

case of Columbia State, as the special fiduciary and special representative to Moyer Sr. Plaintiffs contend that they were in a "special relationship" of dependence on those entities. However, plaintiffs develop no argument in their opening brief that allows us to analyze this complex issue, and we express no opinion on the merits of the issue. Of course, a law firm and a special fiduciary and special representative have their own duties to their clients that could be in conflict with a duty they might owe plaintiffs under plaintiffs' special-relationship theory of liability. Because plaintiffs have not developed any argument in their opening brief that allows us to evaluate this complex issue, we decline to address it and reject the sixth and eighth assignments of error. *See Cunningham v. Thompson*, 188 Or App 289, 297 n 2, 71 P3d 110 (2003), *rev den*, 337 Or 327 (2004) ("Ordinarily, the appellate courts of this state will decline to address an undeveloped argument.").

In sum, we reverse the trial court's decision to dismiss plaintiffs' sixth claim for relief for breach of contract against Columbia State. We conclude that the trial court erred in dismissing that claim because plaintiffs sufficiently alleged ultimate facts constituting a claim for relief to survive a motion to dismiss. However, we conclude that the trial court did not err in dismissing any of the other claims for relief against either Columbia State or the law firm defendants. As a result, we affirm the trial court's dismissal of those other claims.

Limited judgment dismissing plaintiffs' sixth claim for relief against defendant Columbia State Bank reversed and remanded; otherwise affirmed.