406 March 6, 2024 No. 160

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Peter LOWES,
*Plaintiff-Appellant,*
*v.*
Amy THOMPSON,
fka Amy Lowes,
*Defendant-Respondent,*
*and*
OREGON PUBLIC BROADCASTING,
an Oregon domestic non-profit corporation,
*Defendant.*

Deschutes County Circuit Court
21CV28283; A178568

Bethany P. Flint, Judge.

Argued and submitted November 16, 2023.

Julie A. Smith argued the cause for appellant. Also on the briefs were Cosgrave Vergeer Kester LLP; and Ryan C. Kaiser and Broken Top Law, LLC.

Nathan G. Steele argued the cause for respondent. Also on the brief was The Steele Law Firm, P.C.

Before Tookey, Presiding Judge, and Kamins, Judge, and Joyce, Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Upon their divorce, plaintiff-appellant Lowes and defendant-appellee Thompson entered into a settlement agreement which included a mutual nondisparagement provision. The provision, which was ultimately incorporated into a stipulated judgment approved by the court, provides:

> "**MUTUAL NON-DISPARAGEMENT**. Neither party shall make or knowingly encourage any other person to make any public or private statement, whether written or oral, that disparages, defames, is derogatory about, or misrepresents the other party or one of their business interests."

(Boldface in original.) Thompson subsequently allegedly made disparaging and derogatory statements about Lowes—the first instance being when she made statements to an Oregon Public Broadcasting (OPB) reporter, which were later published in an article, that Lowes had abused her during their relationship, and the second being when she sent an email containing abuse allegations to Lowes's office colleagues at Knightsbridge International Real Estate (Knightsbridge).

Lowes brought this action against Thompson, alleging a claim for breach of contract. In response, Thompson filed a special motion to strike under Oregon's anti-Strategic Lawsuits Against Public Participation (anti-SLAPP) statute challenging Lowes's breach of contract claim insofar as it pertained to the statements contained in the OPB article. Thompson also filed a motion to dismiss. The trial court granted both motions, dismissing Lowes's complaint. Lowes appeals, raising three assignments of error. We reverse and remand.[1]

---

[1] Although we reverse on other grounds, we note that the trial court erred in dismissing all claims in response to Thompson's special motion to strike, because the motion challenged only Lowes's claim regarding the statements contained in the OPB article. The allegations regarding the Knightsbridge email were not challenged in Thompson's special motion. Therefore, in granting the special motion, the trial court should have entered a limited judgment striking only the claim regarding the OPB article statements. *See Tokarski v. Wildfang*, 313 Or App 19, 25, 496 P3d 22, *rev den*, 368 Or 788 (2021) (explaining that the legislature did not intend for special motions to strike to be used as a "broad-brush mechanism for striking a complaint" in its entirety).

In his first assignment of error, Lowes argues that the trial court erred in granting Thompson's special motion to strike, because Thompson expressly waived the rights she sought to vindicate in that motion. Thompson responds that the nondisparagement provision does not constitute a waiver of her constitutional and statutory rights to free speech. She further asserts that Lowes failed to present substantial evidence to support each element of his breach of contract claim.

Oregon's anti-SLAPP statute protects against claims that are brought "to chill a person's participation in public affairs." *Dept. of Human Services v. Lindsey*, 324 Or App 312, 315-16, 525 P3d 470 (2023) (internal quotation marks omitted). The anti-SLAPP statute is intended "to provide an inexpensive and quick process by which claims that might infringe on the right to petition and free speech on public issues could be evaluated to determine if they were frivolous." *Page v. Parsons*, 249 Or App 445, 461, 277 P3d 609 (2012). The statute "thus provides a mechanism that allows defendants who claim that the litigation against them is a strategic attempt to chill their participation in public affairs to expeditiously obtain dismissal before incurring significant litigation expenses by filing, instead of an answer, a 'special motion to strike' the complaint." *Handy v. Lane County*, 274 Or App 644, 650-51, 362 P3d 867 (2015), *aff'd in part, rev'd in part on other grounds*, 360 Or 605 (2016) (internal quotation marks omitted).

The filing of a special motion to strike under ORS 31.150[2] triggers a two-step burden shifting process. First,

---

[2] ORS 31.150 was amended effective in 2024; however, because those amendments do not affect our analysis, we refer to the current version of the statute in this opinion. ORS 31.150 provides, in relevant part: "(1) A defendant may make a special motion to strike against a claim in a civil action described in subsection (2) of this section. The court shall grant the motion unless the plaintiff establishes in the manner provided by subsection (4) of this section that there is a probability that the plaintiff will prevail on the claim. * * *

"(2) A special motion to strike may be made under this section against any claim in a civil action that arises out of:

"* * * * *

"(c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

"(d) Any other conduct in furtherance of the exercise of the constitutional right of assembly, petition or association or the constitutional right of free

the court must determine whether the defendant has met the initial burden "to show that the claim against which the motion is made arises out of one or more protected activities." *Young v. Davis*, 259 Or App 497, 501, 314 P3d 350 (2013) (internal quotation marks omitted). Second, "if the defendant meets [the initial] burden, 'the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case.'" *Id*. (quoting ORS 31.150). If the plaintiff meets that burden, the court must deny the special motion to strike. *Id*.

We review a trial court's grant of a special motion to strike for legal error. *Bryant v. Recall for Lowell's Future Committee*, 286 Or App 691, 692, 400 P3d 980 (2017). In reviewing a trial court's ruling on a special motion to strike, "we take the facts from the pleadings and the supporting and opposing declarations and affidavits submitted to the trial court *** and we view the facts underlying [the] plaintiff's claim in the light most favorable to [the] plaintiff." *Deep Photonics Corp. v. LaChapelle*, 282 Or App 533, 545, 385 P3d 1126 (2016), *rev den*, 361 Or 524 (2017) (internal quotation marks omitted).

At the first step, we address whether Thompson met her burden of making a *prima facie* showing that the claim against her "arises out of conduct described in ORS 31.150(2)." *Lindsey*, 324 Or App at 317 (internal quotation marks omitted). In her motion, Thompson challenged Lowes's claim regarding the statements contained in the OPB article, arguing that those statements are protected by the anti-SLAPP statute. The trial court agreed, finding that the statements were made in connection with an issue

---

speech or freedom of the press in connection with a public issue or an issue of public interest.

"*****

"(4) A defendant making a special motion to strike under the provisions of this section has the initial burden of making a prima facie showing that the claim against which the motion is made arises out of a statement, document or conduct described in subsection (2) of this section. If the defendant meets this burden, the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case. If the plaintiff meets this burden, the court shall deny the motion."

of public interest and thus fall under the protection of ORS 31.150(2)(c) and (d). To determine whether a claim arises out of activities described in ORS 31.150(2), we examine the conduct targeted by the claims in the complaint. *Lindsey*, 324 Or App at 318. In answering the factual question of what actions the claim arises out of, we view the evidence in the light most favorable to the plaintiff, based on the facts contained in the pleadings and the declarations and affidavits submitted. *Tokarski*, 313 Or App at 21.

The question here is whether Thompson's speech arises out of "conduct in furtherance of the exercise of the constitutional right *** of free speech *** in connection with a public issue or an issue of public interest" and is thus protected by the anti-SLAPP statute. ORS 31.150(2)(d). The scope of the first anti-SLAPP step is narrow; it focuses on the nature of the conduct. *See Mullen v. Meredith Corp.*, 271 Or App 698, 705, 353 P3d 598 (2015) ("The first part of the inquiry aims merely to assess more generally what sort of claim this is[.]"). At this first step, the question is only whether the defendant has made out a *prima facie* case that activity underlying the plaintiff's claims "arises out of" conduct that falls under one of the statutorily protected categories. *Davoodian v. Rivera*, 327 Or App 197, 205, 535 P3d 309 (2023). If the conduct alleged in support of the plaintiff's claim is of the sort protected by the anti-SLAPP statute, then we move to the second stage of analysis of whether the plaintiff can establish a *prima facie* case of success on the merits. This case involves a waiver of the rights protected by the anti-SLAPP statute, which does not fit neatly within the two-step anti-SLAPP analysis. As explained in greater detail below, we conclude that review of whether defendant waived anti-SLAPP protections is more appropriately considered after the first anti-SLAPP step prior to evaluating plaintiff's *prima facie* case.

Here, the basis of Lowes's breach of contract claim—as challenged by Thompson's special motion to strike—is Thompson's alleged statements contained in the OPB article that characterize Lowes as an "abuser." Those statements, made in connection with what Lowes's complaint characterizes as Thompson's "'me too' political campaign" in the midst

of her run for Deschutes County Commissioner, describe how her political opponent accepted a contribution from her "abuser." Statements made to a news reporter regarding a local political campaign and a broader social movement against sexual violence certainly fall within the scope of ORS 31.150(2)(d).[3] *See DeHart v. Tofte*, 326 Or App 720, 743-44, 533 P3d 829, *rev den*, 371 Or 715 (2023) (holding that posting information regarding elected public officials and their stance on an issue that affected a large number of people fell within the ambit of ORS 31.150(2)(d)); *Wingard v. Oregon Family Council, Inc.*, 290 Or App 518, 522, 417 P3d 545, *rev den*, 363 Or 119 (2018) (holding that the defendants' statements about the plaintiff fell within the protective scope of ORS 31.150(2)(d) because they were made "in furtherance of" the right to speak about candidates for public office). Therefore, the trial court was correct in concluding that Thompson met the initial burden to show that the breach of contract claim against which the motion is made arises out of one or more protected activities.

Having concluded that Thompson met her initial burden, we turn to the second step. Typically, the burden would be on Lowes to establish that there exists a probability that he will prevail on the claim by presenting substantial evidence to support a *prima facie* case. *Handy v. Lane County*, 360 Or 605, 622-23, 385 P3d 1016 (2016). Thompson contends that Lowes failed to adduce substantial evidence of a breach of contract claim, arguing, in particular, that Lowes failed to produce evidence of causation and damages. Lowes responds that, at most, he only needed to offer unchallenged evidence that Thompson waived the right to make the statements at issue. We agree with Lowes that unchallenged evidence of a waiver of the rights protected by the anti-SLAPP statute can satisfy a plaintiff's burden to defeat an anti-SLAPP motion once a defendant has satisfied the burden at the first step.

---

[3] The "Me Too" movement was founded by Tarana Burke more than a decade ago and came to new prominence in October 2017, after women came forward publicly with allegations of sexual harassment and assault by producer Harvey Weinstein. *See* Lesley Wexler, #*MeToo and Law Talk*, 2019 University of Chicago Legal Forum 343, 345-47 (2019) (describing the background and implications of the "Me Too" movement).

At its core, Lowes's claim against Thompson is based on Thompson's alleged violation of the terms of the parties' contractual relationship. Lowes asserts that Thompson waived her rights—constitutional, statutory, or otherwise—to speak disparagingly about him when she agreed to the nondisparagement provision. Thompson acknowledges that she entered into the nondisparagement provision. She further acknowledges that constitutional and statutory rights protected by anti-SLAPP legislation can be waived, but she insists that the mutual nondisparagement provision does not represent a waiver of her rights.

The general rule in Oregon is that "waivers of constitutional and statutory rights may be expressed through contract terms." *Assn. of Oregon Corrections Emp. v. State of Oregon*, 353 Or 170, 183, 295 P3d 38 (2013). When the parties contractually agreed not to make disparaging statements, they necessarily waived the rights—constitutional and statutory—to make them, even if those statements would otherwise qualify for those protections.

Accordingly, the parties' prior contractual agreement not to engage in the very speech that is the subject of the anti-SLAPP motion is sufficient for Lowes to satisfy his burden in response to the special motion to strike. In this case, the trial court concluded that Thompson entered into a contract not to disparage and derogate Lowes and that her ORS 31.150 motion was based on derogatory speech. Having reached that conclusion, the court should have ruled that Lowes's showing of a waiver of protected rights was sufficient to defeat Thompson's anti-SLAPP motion. It is therefore unnecessary for us to reach the second anti-SLAPP step and consider the likelihood of Lowes's breach of contract claim succeeding on the merits.

Our conclusion that unchallenged evidence of a waiver of the rights protected by the anti-SLAPP statute is sufficient to defeat an anti-SLAPP motion even if a defendant can satisfy step one of the analysis is consistent with decisions of California courts. *See Handy*, 360 Or at 623 n 12 (Oregon's anti-SLAPP statute was modeled on California's, so, when construing our anti-SLAPP statute, "the legislature intended to follow the California cases that existed in

2001," and California cases decided after 2001 may be cited for their "persuasive value."). In *Navellier v. Sletten*, 29 Cal 4th 82, 52 P3d 703 (2002), the California Supreme Court discussed its anti-SLAPP statute, recognizing that a release of protected rights can be sufficient to defeat an anti-SLAPP motion. "[A]s the [anti-SLAPP] statute is designed and as we have construed it, a defendant who in fact has validly contracted not to speak or petition has in effect 'waived' the right to the anti-SLAPP statute's protection in the event he or she later breaches that contract." *Id*. at 94, 52 P3d at 712.

In the present case, Lowes sued Thompson because he believed she had breached a contractual provision preventing either party from making certain kinds of speech, and resolution of the claim depends on a determination of the scope of that provision. Even though Thompson satisfied the first anti-SLAPP step of making a threshold showing that the challenged cause of action is one arising from protected activity, Lowes's unchallenged evidence that Thompson waived those statutory protections satisfied his burden. In light of the uncontroverted evidence of a mutual nondisparagement provision that covered the speech at issue here, Lowes has met his burden to defeat the anti-SLAPP motion. Accordingly, the trial court erred in granting Thompson's special motion to strike.

In his second assignment of error, Lowes argues that the trial court erred in granting Thompson's motion to dismiss the breach of contract claim pursuant to *former* ORCP 21 A(8) for failure to state a claim. The trial court granted Thompson's motion to dismiss Lowes's breach of contract claim on the basis that he failed to adequately plead causation and damages.

Former ORCP 21 A(8)—renumbered as ORCP 21 A(1)(h), effective January 21, 2022—both before and after renumbering, allows motions to dismiss for "failure to state ultimate facts sufficient to constitute a claim[.]" In reviewing a trial court's decision under ORCP 21 A to dismiss for failure to state a claim, we will "assume the truth of all well-pleaded allegations and all reasonable inferences favorable to plaintiff that may be drawn from those allegations." *Winamaki v. Umpqua Bank*, 322 Or App 588, 589, 521

P3d 846 (2022), *rev den*, 370 Or 828 (2023). "A determination whether the facts alleged are sufficient to state a claim is a question of law." *Id*.

Turning to the merits, "[t]o state a claim for breach of contract, plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach[,] and defendant's breach resulting in damage to plaintiff." *Moyer v. Columbia State Bank*, 316 Or App 393, 402, 505 P3d 26 (2021), *rev den*, 369 Or 705 (2022) (internal quotation marks omitted). "A claim will survive a motion to dismiss if the complaint contains even vague allegations of all material facts." *Id*. at 403 (internal quotation marks omitted). Lowes challenges the trial court's determination that he did not adequately allege causation or damages.

Lowes contends that the complaint adequately alleged causation and damages because it alleged that (1) Thompson's actions caused the specified harm and (2) he suffered financial and reputational harm. Thompson responds that Lowes failed to properly state a breach of contract claim, because he failed to allege causation or damages.[4]

We agree with Lowes that the allegations of the complaint were sufficient. First, Lowes's allegation that the harm identified in his complaint was a "result" of Thompson's alleged breach sufficed to adequately allege causation. Lowes named a type and amount of damages that he claimed resulted from Thompson's alleged statements. As such, the complaint adequately put Thompson on notice of the causal relationship between particular statements and the loss and damages incurred as a result of those particular statements. *See Moyer*, 316 Or App at 402 (To state a claim for breach of contract, a plaintiff must allege the "defendant's breach resulting in damage to plaintiff."). Thompson also contends that Lowes failed to properly state a claim for breach of contract, because his complaint did not allege that his harm was the foreseeable consequence of her alleged statements. However, Thompson did not raise that argument below, so we need not reach the merits of that argument.

---

[4]     Thompson also alleges that Lowes failed to adequately allege performance; however, the trial court ruled against Thompson on that matter, and she does not cross-assign error to that ruling.

Second, with respect to damages, the complaint alleges that, as a "direct *** result" of Thompson's alleged breaches, Lowes "has suffered irreparable financial and reputational harm in the amount of $1,300,00.00." Lowes's allegation that he is entitled to "$1,300,000.00" for "irreparable financial and reputational harm" is a factual allegation of damages. *See Doe v. Portland Health Centers, Inc.*, 99 Or App 423, 428-29, 782 P2d 446 (1989), *rev dismissed*, 310 Or 476 (1990) (holding that damages for "loss of business profits, reputation[,] and opportunity" may be recovered in a breach of contract action). Although, as Thompson notes, the complaint does not allege concrete evidence to support the amount of alleged damages, Lowes was not required to provide supporting evidence at that stage of the proceedings. *See Moyer*, 316 Or App at 405 (concluding "that no such further detail nor supporting evidence was required at the pleading stage of these proceedings *** [and that plaintiffs] are not required under ORCP 18 A to allege evidence"); ORCP 18 (requiring only a "plain and concise statement of the ultimate facts constituting a claim for relief"). Lowes adequately alleged causation and damages, and the trial court therefore erred in granting Thompson's motion to dismiss the complaint for failure to state a claim.

Reversed and remanded.