Argued and submitted December 19, 2007; on appeal, affirmed; on cross-appeal, affirmed February 6, 2008

Doris H. KITTREDGE,
*Plaintiff-Respondent*
*Cross-Appellant,*

*v.*

Patrick Edward O'KEEFE,
Michael V. Ferns and Dorothy A. Ferns,
*Defendants-Appellants*
*Cross-Respondents.*

Lake County Circuit Court
030070CV; A131754

177 P3d 28

Gerald A. Martin argued the cause for appellants - cross-respondents. With him on the briefs was Francis Hansen & Martin LLP.

Judith Giers argued the cause for respondent - cross-appellant. With her on the brief was Giers Olsson PC.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendants appeal, and plaintiff cross-appeals, from a judgment directing the partition of real property in Lake County, known as the "Godon Ranch," which the parties held as tenants in common. We review *de novo. See Thompson Estate Co. v. Kamm*, 107 Or 61, 66, 213 P 417 (1923). On appeal, defendants assert that the partition was inequitable in that it did not comport with certain evidence relating to the value of certain parcels. We reject that contention without discussion and, consequently, affirm on appeal. On cross-appeal, plaintiff asserts that the partition was based on an erroneous premise as to her proportionate interest in the property. As explained below, we decline to consider the substance of that contention and, consequently, affirm on the cross-appeal.

The subject property consists of nine parcels, totaling 4,735 acres in northern Lake County, near Fort Rock. Plaintiff held a one-third interest in seven of those parcels and a one-quarter interest in the other two parcels. In March 2003, plaintiff petitioned, pursuant to ORS 105.205, seeking a sale of the subject property.[1] Plaintiff contended, in part, that the parties were "unable to agree on management decisions with respect to the property" and that "[a]n equal and equitable partition of the property cannot be had without great prejudice to the owners of the property and, therefore, the property should be sold." Defendants did not oppose the petition but argued that the court should not order sale of the property because it could be fairly partitioned without great prejudice to the parties.

The parties' dispute as to the proper disposition of the property triggered the process prescribed in ORS 105.245, which provides:

---

[1] ORS 105.205 provides:

"When several persons hold real property as tenants in common, in which one or more of them have an estate of inheritance, or for life or years, or when several persons hold as tenants in common a vested remainder or reversion in any real property, any one or more of them may maintain a suit for the partition of the real property according to the respective rights of the persons interested therein, and for a sale of all or a part of the property if it appears that a partition cannot be had without great prejudice to the owner."

> "If it is alleged in the complaint and established by evidence, or if it appears by the evidence to the satisfaction of the court without an allegation in the complaint, that the property or any part of it is so situated that partition cannot be made without great prejudice to the owners, the court may order a sale of the property, and for that purpose may appoint one or more referees. Otherwise, upon the requisite proofs being made, it shall enter a judgment requiring a partition *according to the respective rights of the parties, as ascertained by the court.* The court shall appoint three referees to partition the property and shall designate the portion to remain undivided for the owners whose interest remain unknown or not ascertained."

(Emphasis added.) Following a trial that focused on the "sale versus partition" dispute, the trial court, on November 18, 2004, issued a letter opinion directing that the property be partitioned and expressing its intention to appoint referees to partition the property in accordance with ORS 105.255.[2] The trial court's letter opinion concluded:

> "Therefore, it is the judgment of the court, that the referees partition the property *with 30% of value to plaintiff as her separate property*, and 70% of the value of the property to defendants in common."

(Emphasis added.)

Plaintiff did not object to the trial court's determination that she held a 30 percent interest in the property and that the referees should act in accordance with that determination. In particular, plaintiff did not contend that her interest exceeded 30 percent of the value of the property.

On February 7, 2005, the trial court issued its Partition Order, to which the November 18, 2004, letter opinion was attached as an exhibit. Paragraph 2 of that order stated

---

[2] ORS 105.255 provides:

"In making the partition the referees shall divide the property and allot the several portions thereof to the respective parties, quality and quantity relatively considered, according to the respective rights of the parties as determined by the court. They shall designate the several portions by proper landmarks, and may employ a surveyor with the necessary assistants to aid them. The referees shall make a report of their proceedings, specifying therein the manner of executing their trust and describing the property divided and the shares allotted to each party with a particular description of each share."

that "[p]artition shall be according to the respective rights of the parties, which are described in Exhibit 3 hereto." "Exhibit 3" identified the parties' proportionate interests in each of the nine parcels.[3]

In March 2005, the trial court issued its Order Appointing Referees pursuant to ORS 105.245 and ORS 105.255. That order specified, in part, that the referees should "divide the property and allot the severed portions thereof to the respective parties, quality and quantity relatively considered according to *the respective rights of the parties that have been determined by this court.*" (Emphasis added.) The trial court's cover letter to the referees enclosed a copy of the Partition Order, along with its exhibits, including the letter opinion, a property description of the ranch, and the description of the parties' proportionate interests in the nine parcels.

In July 2005, the referees issued their report, which recommended a partition of the property in such a way that defendants would receive property with a market value of $763,450 (69.85 percent) and plaintiff would receive property with a market value of $329,575 (30.15 percent). The report stated that the recommended partition comports with "the most equitable 30/70 percent partition of the subject ranch." The report further noted that the shift of one 80-acre parcel from defendants to plaintiff would result in a 69 percent/ 31 percent division of total value.

Both parties objected to the referees' report. As pertinent to the cross-appeal, plaintiff contended that the report's recommended division did not comport with her "percentage of ownership interest," which her counsel described as "32 something." Accordingly, plaintiff proposed that she be awarded the additional 80-acre parcel referenced in the referees' report or, alternatively, receive an equalizing judgment of $25,000. The trial court rejected the parties' objections and

---

[3] Plaintiff had objected to language in paragraph 2 of defendants' proposed form of partition order, stating that "the Partition Order should properly reflect the division of the parties' property as set forth in Plaintiff's Complaint and admitted to by Defendant[s] rather than approximate values." That proposed form of order is not in the record, and nothing in paragraph 2 of the final order includes any language corresponding to that objection.

entered a general judgment of partition that accorded exactly with the referees' recommendations.

On cross-appeal, plaintiff contends that her actual proportionate ownership in the property was 32.25 percent[4] and that, on *de novo* review, we should adjust the division on partition to award her *both* the additional 80-acre parcel she sought in the trial court *and* an equalizing judgment of $13,662.[5]

Whatever the abstract merit of plaintiff's contention, we decline to consider it because it came too late. The statutory scheme governing partition contemplates that the trial court will, before submitting the matter to referees, determine the "respective rights of the parties" in the property. *See* ORS 105.245 (the court is to "enter a judgment requiring a partition according to the respective rights of the parties, as ascertained by the court"); ORS 105.255 ("In making the partition the referees shall divide the property and allot the several portions thereof * * * according to the respective rights of the parties as determined by the court."). Thus, the trial court's initial determination in that regard is the premise—the predicate—for the statutorily prescribed process. Here, as noted, the trial court, in determining that the property should be partitioned and sold and in referring the matter to the referees pursuant to ORS 105.245 and ORS 105.255, explicitly determined that "the referees partition the property with 30 percent of the value to plaintiff as her separate property, and 70 percent of the value of the property to defendants in common." Plaintiff did not then object that that determination was erroneous. Rather, it was only after the referees had completed their task and submitted their report, which was, necessarily, predicated on the trial court's "70 percent/30 percent" determination, that plaintiff, for the

---

[4] As noted, the total property consisted of 4,735 acres. Plaintiff owned a one-quarter interest in two parcels totaling 600 acres (150 acres) and a one-third interest in the other seven parcels containing the remaining 4,135 acres (1,378 acres), for a total of 1,528 acres or 32.25 percent of the combined parcels.

[5] Plaintiff derived that amount by accepting the referees' determination, noted above, that receipt of the additional 80 acres would increase her share of the total property valuation to 31 percent. Respecting the remaining 1.25 percent to which she asserts an entitlement, $13,662.81 constitutes 1.25 percent of the total appraised value of the property ($1,093,025).

first time, objected that her actual interest was "32 something."

Whether more properly styled as a species of waiver or one of nonpreservation, the prudential and practical point is the same: Plaintiff's ultimate objection in the trial court (as now amplified on cross-appeal) came too late for two related reasons. First, plaintiff had ample opportunity to raise that objection before the referees began their work. Second, to entertain such an objection, raised for the first time after the referees submitted their report, would impermissibly subvert and frustrate the orderly process prescribed in ORS 105.205 to 105.405.

The trial court did not err in rejecting plaintiff's objection to the referees' report and in entering the general judgment of partition that accorded with that report.[6]

On appeal, affirmed; on cross-appeal, affirmed.

---

[6] Our analysis and disposition obviates any need to determine whether, as defendants suggest, plaintiff's purported "acceptance of the benefits" of the judgment precluded her prosecution of the cross-appeal.