No. 1102          December 24, 2025          5

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Glen CARTER,
individually and as Personal Representative of the
Estate of Connie Marie Carter,
*Petitioner-Respondent,*

*v.*

Jeffery George SMITH,
individually and as Trustee of the
George and Sharon Smith Living Trust under
agreement dated February 20, 2017,
*Respondent-Appellant.*

Union County Circuit Court
23CV08390; A184191

Wes Williams, Judge.

Argued and submitted September 22, 2025.

Bradley T. Crittenden argued the cause for appellant. Also on the briefs was Chenoweth Law Group, PC.

George W. Kelly argued the cause and filed the brief for respondent.

Before Aoyagi, Presiding Judge, Kamins, Judge, and Pagán, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Jeffery Smith, the trustee and a beneficiary of the George and Sharon Smith Living Trust, appeals a judgment that, among other things, divides the trust's real property between himself and Glen Carter (Carter), the personal representative and sole beneficiary of the estate of Connie Carter, who was the other beneficiary of the trust. Smith contends that the trial court erred in partitioning the trust's real property under ORS 105.205 because the trust was the sole owner of the property and ORS 105.205 allows partition only when real property is owned by multiple owners as tenants in common. As explained below, we conclude that, notwithstanding the court's use of the term "partition" in its findings regarding the property division, it ordered the division under the Uniform Trust Code (UTC), ORS 130.001 to 130.910, as a remedy for multiple breaches of trust by Smith. Smith also appeals a supplemental judgment awarding Carter attorney fees, contending that the court plainly erred in entering it because Carter did not plead a statutory entitlement to fees. We conclude that any error was not plain. Accordingly, we affirm the general and supplemental judgments.

## FACTS

The relevant facts are procedural. Carter filed a complaint seeking a declaratory judgment and partition of trust property under ORS 105.205. The caption of the complaint read, "CLAIM: DECLARATORY RELIEF, PARTITION, ATTORNEY FEES, COSTS, AND DISBURSEMENTS." The complaint alleged, among other things, that a trust existed and was governed by the trust instrument attached to the complaint; that the trust owned certain real property; that the trust instrument provided for equal division of trust assets between the two beneficiaries, Smith and Connie Carter; that Carter was the administrator and sole beneficiary of Connie Carter's estate; that Carter and Smith were unable to agree on an equitable division of the trust assets; and that Carter was "therefore entitled to distribution of one-half of the ownership interests to be distributed from" the trust.

Smith moved for summary judgment, asserting that, because the trust's real property was not owned by "two or more parties," partition was inappropriate. He further asserted in the supporting memorandum that he had made a proposal to buy Carter's half of the trust's real property for approximately $180,000, that Carter had not responded, and that therefore there was "presently no genuine issue of material fact regarding the final trust asset distribution that requires court intervention to resolve."

Carter opposed the summary judgment motion. He asked the court to "determine the methodology [for dividing the trust's real property] so that the George and Sharon Smith Living Trust is distributed equally between" Carter and Smith. In an attached declaration, Carter listed a variety of actions by Smith and asserted that they violated various provisions of the UTC.

At the summary judgment hearing, Carter suggested that the pleaded claims should be understood to encompass the parties' whole trust dispute, reiterating that Smith's actions violated the UTC. Smith pointed out that those things were "not really teed up in the complaint" and again argued that because the trust, rather than multiple individuals, still owned the real property, "the partition aspect of this is a down the road problem." The trial court denied the motion for summary judgment.

At the start of trial, Smith acknowledged that, ultimately, the parties "should not own any property together" but asserted that, "procedurally, I still maintain that a partition is premature, because you can't partition something that's not owned by two people yet and so that's largely *** our objections to the petition." Smith did not contend that the court should not address the trust dispute more broadly.

At trial, without objection from Smith, Carter presented evidence regarding all aspects of the trust dispute, including breaches of trust by Smith and a request to remove Smith as trustee. In response, Smith presented evidence regarding his management of the trust, including documentation of income and expenses of the trust, and of

his offer to Carter to buy Carter's share of the real property, which he contended was a proposed distribution of the trust.

In closing argument, Carter asserted that the dispute was within the court's jurisdiction as a dispute regarding a trust:

> "This proceeding, obviously, is a matter within the jurisdiction of the Court, there's no question about that. There's no question about the Court's authority to supervise as to the scope necessary for trust administrations."

Carter read aloud ORS 130.625(1), which provides that "the settlor, a cotrustee or a beneficiary may request that a court remove a trustee, or a trustee may be removed by a court on its own motion"; argued that the court should remove Smith; and concluded by stating that "[i]t's almost as if there has been no compliance provided whatsoever under the provisions of ORS Chapter 130."

In his closing, Smith noted that trustee removal was outside the scope of the complaint but recognized the court's power to consider it: "[T]he complaint only asks for the partition; it doesn't ask for the removal of the trustee. So, you know I do understand the Court on its own motion can do that." He then argued against removal of the trustee. As for partition, Smith reiterated his view that it was inappropriate because the trust still owned the property, but he also acknowledged that "the Court can order the distribution because we are here in front of the Court." He suggested that the court could solve the parties' problem without partition by simply dividing the property:

> "I don't really see the need for a whole partition action because the Court could just cut in front of that because the property is still in the trust. It's not co-owned by Mr. Carter and Mr. Smith at the moment where you have two co-owners who can't agree on how to manage the property. So, you know, we can really cut in front of the partition action by ordering X and Y to X, and Y and A to Z. Or, you know, whatever the Court fashions."

In response, the court asked what Smith's proposed division would be, and Smith stated that he would like something similar to his offer to Carter, *i.e.*, Smith taking ownership

of all the real property and paying Carter approximately $180,000.

The court issued a written judgment containing detailed findings and conclusions. It found that the trust owned five parcels of real property and that "[a]n equitable partition of the properties can be had without great prejudice to the owners of the property." The court determined that Smith had breached his duties as trustee in seven ways, setting out each relevant provision of the UTC and describing Smith's conduct that violated each provision. The court then stated that, as "[t]he remedy for these violations," it was awarding two of the five parcels, totaling around 194 acres, to Carter, and the other three parcels, totaling around 216 acres, to Smith. The court further ordered, "After partitioning the parcels identified above, the properties shall be appraised by an appraiser agreed to by both parties" and, because the court anticipated that the land awarded to Smith was worth more than that awarded to Carter, "there will be an equalizing judgment awarded to [Carter from Smith]." The court also removed Smith as the trustee, and it awarded attorney fees to Carter.

## PARTITION

On appeal, Smith renews his argument that the trial court could not order partition under ORS 105.205 when the trust was sole owner of the property. However, he does not challenge division of the property as a "remedy" for UTC violations.[1]

We agree with Smith that partition under ORS 105.205 was unavailable in these circumstances. *See* ORS 105.205 (partition is available when "*several persons* hold real property *as tenants in common*" (emphases added)). However, notwithstanding imprecision in the judgment and some confusion among the parties and the court as to the

---

[1] At oral argument on appeal, Smith asserted for the first time that no mechanism exists other than partition under ORS 105.205 by which the court could distribute the trust's real property between the two beneficiaries and order an equalizing money judgment. We perceive that to have been intended as an argument for why we should understand the court to have ordered partition under ORS 105.205. However, to the extent that it was intended as a substantive argument that the court erred if it ordered that as a trust remedy, it comes too late to be considered.

relationship between partition and the court's powers under the UTC, our understanding, given all of the circumstances, is that what the court actually did was to take jurisdiction over a trust dispute and resolve that dispute. As Smith proposed in his closing argument, the court "cut in front of the partition action" and simply resolved the trust dispute, albeit not in the way that Smith would have preferred. The court awarded two parcels to Carter and three parcels to Smith, with an equalizing judgment, as "the remedy" for Smith's breaches of trust.

We reach that conclusion notwithstanding the court's finding that "[a]n equitable partition of the properties can be had without great prejudice to the owners of the property," which is a prerequisite to partition under ORS 105.205, and its statement that an equalizing judgment would be entered "[a]fter partitioning the parcels." Although those two statements would be consistent with a choice to grant partition under ORS 105.205, the court also specifically stated that its division of the property was "the remedy for these violations," where "these violations" were seven specific breaches of trust by Smith. And it did not order the procedure contemplated by the partition statutes. *See* ORS 105.245 (requiring the court, upon determining that partition is appropriate, to "enter a judgment requiring a partition according to the respective rights of the parties" and "appoint three referees to partition the property"); ORS 105.255 (requiring the referees to divide the property, allot the portions thereof, and issue a report); ORS 105.260 (providing for the court to confirm or set aside the report and, if necessary, appoint new referees). Rather, it simply distributed the five parcels between the two beneficiaries and retained jurisdiction to enter a money judgment after an appraisal. In our view, the court ultimately resolved a trust dispute, in line with what had been litigated, despite the inapt use of the term "partition."[2] *See generally* ORS 130.800(2)(j) (allowing the court to order any appropriate relief to remedy a breach of trust).

---

[2] Smith points to case law that, he asserts, shows that it is possible to partition real property without dividing any individual parcels. *Kittredge v. O'Keefe*, 217 Or App 599, 602-04, 177 P3d 28 (2008). That may be true; we express no opinion on that question. Our conclusion is simply that, under these particular circumstances, the court ordered a trust remedy, not partition under ORS 105.205. Further, to the extent that Smith contended at oral argument that the money

ATTORNEY FEES

We turn to the supplemental judgment. The trial court awarded attorney fees to Carter under ORS 130.815, which provides, "In a judicial proceeding involving the validity or administration of a trust, the court may award costs and expenses and reasonable attorney's fees to any party, to be paid by another party or from the trust." On appeal, Smith contends that the court plainly erred in awarding fees to Carter, because Carter did not plead them as required by ORCP 68 C(2)(a). ORCP 68 C(2)(a) provides that "[a] party seeking attorney fees shall allege the facts, statute, or rule that provides a basis for the award of fees in a pleading filed by that party" and that "[n]o attorney fees shall be awarded unless a right to recover fees is alleged as provided in this paragraph ***." Smith did not object on that basis in the trial court, so the claim of error is unpreserved, and Smith requests plain-error review.

"Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). However, we have discretion to correct "plain" errors. ORAP 5.45(1). An error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013).

Smith relies on *Wedemeyer v. Nike Ihm, Inc.*, 319 Or App 781, 513 P3d 610 (2022), to argue that it was plain error to award fees here. Carter counters that there is no plain error under *Moyer v. Columbia State Bank*, 315 Or App 728, 503 P3d 472 (2021). As explained below, we conclude that any error is not plain under current law.

As context for *Wedemeyer* and *Moyer*, we begin with *Mulier v. Johnson*, 332 Or 344, 351, 29 P3d 1104 (2001), in which the Supreme Court addressed the relationship

judgment aspect of the court's distribution is not a trust remedy, he has not cited, and we have not found, any Oregon case law to support the proposition that, when ordering distribution of real property belonging to a trust in accordance with the trust instrument's distribution instructions, a court cannot provide for a money judgment as well as distributing the real property between the beneficiaries. As noted, Smith does not challenge the substance of the court's trust remedy; he asserts only that it was not appropriate under ORS 105.205.

between ORCP 68 C's pleading requirement for attorney fees and ORCP 12 B's prejudice rule regarding errors or defects in pleadings. The plaintiff in *Mulier* filed a complaint alleging three claims, and, in response, the defendant filed a motion for summary judgment in lieu of an answer. *Id.* at 346-47. The motion did not assert any right to attorney fees; however, the accompanying memorandum asserted a right to fees on the third claim. *Id.* at 347. The trial court granted summary judgment for the defendant on all three claims, and it awarded fees on the third claim. *Id.* We affirmed the fee award, treating the failure to allege a right to fees in the motion as immaterial given the concurrently filed memorandum "and the lack of any possible prejudice to plaintiff." *Id.* at 348. In doing so, we relied on ORCP 12 B, which provides, "The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party." *See Mulier*, 332 Or at 348-49 (discussing our reliance on ORCP 12 B).

The plaintiff sought review, arguing that relying on ORCP 12 B to excuse compliance with ORCP 68 C(2)(b) "effectively 'swallows' the requirement in ORCP 68 C that the right to attorney fees be alleged in a pleading or in a motion seeking judgment or dismissal." *Id.* at 348. The Supreme Court reversed. As a matter of statutory construction, it concluded that ORCP 12 B does not apply where a party has not alleged any right to fees in the pleading, because a complete absence is not an "error" or "defect" within the meaning of ORCP 12 B. *Id.* at 350. The court explained:

> "The words 'error' and 'defect' in ORCP 12 B reflect the legislature's intent that a party *must attempt to comply with the mandatory requirements of the rules of civil procedure* if that party is to benefit from the provisions of ORCP 12 B. A complete failure to allege the right to attorney fees in a motion under ORCP 68 C(2)(b) does not demonstrate *an attempt to comply* with the requirements of that rule. *See Hawkins v. City of La Grande*, 315 Or 57, 63-64, 843 P2d 400 (1992) (ORCP 12 B not a basis for disregarding complete failure to plead affirmative defense as required by rules of civil procedure)."

(Emphases added.) Because the defendant had not pleaded a right to fees at all, it was error to award fees. *Id.* at 351. It

was irrelevant that fees were requested in the accompanying memorandum, as that was not a pleading, and it neither cured the failure to allege a right to fees in the motion nor "transform[ed] that failure into an attempt to comply with the rules of civil procedure for purposes of ORCP 12 B." *Id.*

Under *Mulier*, it is clear that a court cannot award attorney fees to a party who has *completely failed* to allege a right to fees in their pleading. *See Guzek v. Fhuere*, 342 Or App 682, 577 P3d 1175 (2025) (describing *Mulier* as making "a distinction between a 'complete failure' to comply" with a procedural rule and "an imperfect attempt" to do so, as relevant to "whether a party can avail themselves of ORCP 12 B").

In *Bridgestar Capital Corp. v. Nguyen*, 290 Or App 204, 210, 415 P3d 1095 (2018), we acknowledged that some of our prior case law was inconsistent with *Mulier* and clarified our understanding of the law after *Mulier* as follows:

> "We take this opportunity to clarify that, after *Mulier* \*\*\*, a party's complete failure to comply with the textual requirements of ORCP 68 C(2) cannot be excused by the fact that the opposing party's pleadings, or the circumstances as a whole, would have alerted the opposing party of the prevailing party's intention to seek attorney fees. Nor can complete failure to comply be excused by the fact that the opposing party was not prejudiced by the failure. 'A complete failure to allege the right to attorney fees [as required by ORCP 68 C(2)] does not demonstrate an attempt to comply with the requirements of that rule' and, consequently, cannot be excused by ORCP 12 B. *Mulier* \*\*\*, 332 Or at 350."

(Brackets in *Bridgestar Capital Corp.*) Thus, the first question must be whether a party "alleged, or at least attempted to allege, the right to recover attorney fees in [their] pleadings in one of the ways required by ORCP 68 C(2)(a)"—because "[i]f [they] did not, ORCP 12 B cannot excuse the omission." *Id.* at 208. We reversed the fee award in *Bridgestar Capital Corp.* on that basis. *Id.* at 211. Similarly, in *Wedemeyer*, 319 Or App at 783, we held that it was plain error to award attorney fees to a party who had made no attempt to comply with the requirements of ORCP 68 C(2)(a), including never alleging a right to fees in any pleading.

What is less clear is how much of an "attempt" at pleading attorney fees is enough to trigger the application of ORCP 12 B. In *Bruce v. Cascade Collections, Inc.*, we held that the plaintiff had done enough under *Mulier* to trigger ORCP 12 B, where he "allege[d] the facts supporting a fee entitlement under the [Fair Credit Reporting Act] and then included [an] express request for fees in the prayer [in his complaint], but not in the claim itself," which we viewed as a manifest, albeit imperfect, "attempt to comply with ORCP 68 C(2)(b)." 199 Or App 59, 66-67, 110 P3d 587, *rev den*, 339 Or 66 (2005). Because ORCP 12 B applied, we proceeded to the prejudice test described as follows:

> "[T]he threshold inquiry is whether the pleading adequately alleged the facts that provide the basis for the fee entitlement. Once that prerequisite is satisfied (as it was here), the question becomes one of notice—and, in that regard, it makes no difference * * * whether the defendant was fairly alerted by the allegations of the first claim for relief or by the content of the prayer describing the relief sought for that claim."

*Id.* (internal quotation marks omitted).

More recently, in *Moyer*, we affirmed an award of attorney fees under ORS 130.815 to the plaintiff in a trust action where he had pleaded a right to fees under the trust instrument but not ORS 130.815. 315 Or App at 748. We reasoned that "it is not necessary under the rule to allege a specific statutory basis for attorney fees" as long as the allegations in the pleading "include all facts that must be proved to meet the statutory criteria for an award." *Id.* We stated that the pleading requirement in ORCP 68 C "is satisfied when: (1) the facts alleged in a party's pleadings provide the basis for such an award; (2) the parties in the case have fairly been alerted that attorney fees would be sought; and (3) no prejudice would result." *Id.* We concluded that the complaint in *Moyer* satisfied that standard. *Id.* at 749-50.

This case is distinguishable from *Wedemeyer* (and other cases in that line) because Carter did not completely fail to allege a right to attorney fees in his pleading. He included "attorney fees" as part of his "claim" in the caption of his complaint. That may not be much, but it is more than

the parties in *Mulier* and *Wedemeyer* did, and it is arguably comparable to including fees in the prayer as occurred in *Bruce*. It is therefore not obvious and is reasonably in dispute whether Carter sufficiently attempted to comply with ORCP 68 C(2)(b) to trigger ORCP 12 B. We cannot say under existing case law that the trial court *plainly* erred in applying ORCP 12 B in these circumstances. Further, if ORCP 12 B does apply, the trial court did not *plainly* err in concluding that the *Moyer* standard was satisfied, such that fees could be awarded. It is reasonably disputable whether the complaint adequately alleged the facts providing a basis for fee entitlement, whether the inclusion of attorney fees in the caption fairly alerted Smith that fees would be sought, and whether Smith was prejudiced. Because any error is not "plain," we reject the second assignment of error.

Affirmed.